451 So.2d 447 (1984)
INSURANCE COMPANY OF NORTH AMERICA and John Menninger, Petitioners,
v.
Richard D. PASAKARNIS, Respondent.
No. 63312.
Supreme Court of Florida.
April 12, 1984.
Rehearing Denied July 10, 1984.
*449 Marjorie Gadarian Graham of Jones & Foster, West Palm Beach, for petitioners.
James C. Gavigan of the Law Offices of Hoadley & Gavigan, West Palm Beach, for respondent.
Kenneth L. Ryskamp of Goodwin, Ryskamp, Welcher & Carrier, Miami, for the Florida Defense Lawyers Association; Aubrey V. Kendall, P.A., Miami, and Edward T. O'Donnell of Mershon, Sawyer, Johnston, Dunwody & Cole, Miami, for the Motor Vehicle Manufacturers Association of the United States, Inc.; Frederick C. Heidgerd, Ft. Lauderdale, for Florida Safety Councils; and Larry Klein, West Palm Beach, for The Academy of Florida Trial Lawyers, amici curiae.
ALDERMAN, Chief Justice.
We review the decision of the District Court of Appeal, Fourth District, in Insurance Co. of North America v. Pasakarnis, 425 So.2d 1141 (Fla. 4th DCA 1982), wherein the district court certified as a question of great public importance whether Florida courts should consider seat belt evidence as bearing on comparative negligence or mitigation of damages. This is the first opportunity we have had to consider what effect, if any, plaintiff's failure to wear a seat belt has upon his or her right of recovery in an action for personal injuries incurred as a result of an automobile accident. Contrary to the decision of the district court, we hold that evidence of failure to wear an available and fully operational seat belt may be considered by the jury in assessing a plaintiff's damages where the "seat belt defense" is pled and it is shown by competent evidence that failure to use the seat belt produced or contributed substantially to producing at least a portion of the damages.
The facts of this case are simple and straightforward. While driving a jeep, without having fastened the available and fully operational seat belt contained therein, Richard Pasakarnis was injured in an accident caused entirely by John Menninger who had run a stop sign and struck Pasakarnis's jeep broadside. Pasakarnis was thrown from the jeep and landed on his posterior. As a result, he sustained a compression-type injury to his lower back. His treating physician testified that his injury was caused by his flying through the air and impacting on the pavement.
In their answer to the complaint, defendants, petitioners here, alleged as an affirmative defense that at the time of the accident, Pasakarnis had available for his use a seat belt which, had it been utilized, would have substantially reduced or prevented any bodily injuries to him; that Pasakarnis was negligent in failing to use this safety device; and that his damages should be reduced in proportion to his negligence. Relying upon Brown v. Kendrick, 192 So.2d 49 (Fla. 1st DCA 1966), Pasakarnis moved to strike this affirmative defense, contending that, because he had no duty to wear a seat belt, the fact that he was not wearing his seat belt when this accident occurred does not establish a legal basis to reduce the amount of his damage award. The trial court granted the motion to strike, holding that expert testimony pertaining to the nonuse of seat belts and the causal relationship between nonuse and Pasakarnis's injuries would not be admissible at trial. The court did allow the defendants to take the deposition of their expert and proffer it so that it would be a part of the record for purposes of review by the appellate court.
The defendants proffered the deposition of an engineer-accident analyst who stated that had Pasakarnis properly utilized his seat belt, it would have restrained him in *450 the seat of the jeep and he would not have been ejected. The engineer explained in detail the approach he took to reach this conclusion. Further, in response to the question of whether Pasakarnis would have been likely to suffer any injury inside the jeep itself if he had been restrained by his seat belt and shoulder harness at the time of impact, the expert opined that within a high degree of probability, Pasakarnis would not have sustained any injury.
The jury found that Menninger was 100 percent responsible for the accident and that the total amount of Pasakarnis's damages was $100,000. Petitioners' motion for new trial, alleging, among other things, that the court erred in granting the motion to strike the "seat belt defense," was denied.
Upon appeal, the District Court of Appeal, Fourth District, affirmed the judgment of the trial court holding the seat belt evidence inadmissible on the authority of Lafferty v. Allstate Insurance Co., 425 So.2d 1147 (Fla. 4th DCA 1982), which decision is also before us for review. The Fourth District in Lafferty elected to follow a line of authority which disallows evidence of failure to use an available operational seat belt. It found that the effectiveness of seat belts in preventing or limiting injury is still questionable and concluded that their nonuse should not be deemed prima facie unreasonable. It asserted judicial restraint as a compelling reason to answer the certified question in the negative and, agreeing with the First District's decision in Brown v. Kendrick, decided that it was not within the province of the courts to legislate on the use of seat belts.
Judge Schwartz, dissenting, agreed with another line of authority which permits such evidence to be submitted to the jury in those cases where there is competent evidence to show that the plaintiff's failure to use an available seat belt bore a causal relation to the plaintiff's injuries. He concluded that nonuse of a seat belt may not be deemed negligent or nonnegligent conduct as a matter of law, but it is necessarily a matter to be determined in each instance by the jury.
Although we have not previously had an opportunity to address the issue of the viability of the "seat belt defense," this issue has been raised in several decisions of the district courts of appeal. The majority of district courts, however, have not considered the viability of the defense under any theory because in the cases before them either the facts did not establish that plaintiff failed to use his or her belt or the evidence did not establish that the injuries would have been prevented or their severity lessened by use of an available and operational seat belt.
This issue was first considered in the 1966 First District case of Brown v. Kendrick. In that case, plaintiff was injured in an automobile accident while she was riding as a guest in an automobile owned by the defendant and driven by his sixteen-year-old son. In his answer, the defendant attempted to raise the defense of contributory negligence based upon an allegation that plaintiff had not used an available seat belt. The trial court struck the defense, and the First District affirmed. The First District held that the defendant had failed to show, except by conjecture, that use of the seat belt would have prevented the plaintiff's injury. Because of the controversy over the safety features of seat belts in 1966 when that case was decided, the First District felt that the issue of the "seat belt defense" was one for the legislature rather than the courts to resolve. See also Paschal v. Pinkard, 228 So.2d 633 (Fla. 1st DCA 1969).
In Chandler Leasing Corp. v. Gibson, 227 So.2d 889 (Fla. 3d DCA 1969), defendants sought reversal of a judgment on the basis that the trial judge had erred in not permitting argument to the jury on the failure of plaintiff to fasten her seat belt. Finding that defendants did not plead contributory negligence and did not seek any instructions on the issue, the Third District affirmed. It additionally commented that had the issue been properly raised, defendants *451 would still have to face Brown v. Kendrick.
This issue was more recently argued in Quinn v. Millard, 358 So.2d 1378 (Fla. 3d DCA 1978), wherein defendants argued that the trial court erred in directing a verdict against them on their claimed defenses of comparative and contributory negligence where they had asserted that plaintiff's failure to buckle his seat belt contributed to the severity of his injuries. The Third District did not rule on this issue, however, because it held that the record did not contain sufficient evidence to demonstrate that plaintiff would have sustained less serious injuries had he been wearing his seat belt at the time of collision.
In Selfe v. Smith, 397 So.2d 348 (Fla. 1st DCA), review denied, 407 So.2d 1105 (Fla. 1981), the First District, in addressing the issue of whether parents had a duty to install a child restraint device in their pickup truck, expressly said: "[W]e have read no authoritative suggestion that a parent's duty to anticipate and protect his infant passenger against the negligence of other drivers extends beyond buckling an available restraint device and encompasses an earlier duty to buy and install such a device." 397 So.2d at 351.[1] The court then commented that in light of its ruling, it was unnecessary for it to advance the "troublesomely unconvincing, arguments against reducing the damages to be awarded in a comparative negligence state to one whose injury was more serious because he did not buckle an available seat belt." Id.
Pasakarnis urges that we adhere to the First District's ruling in Brown v. Kendrick and answer the certified question in the negative. He asserts that the single most compelling reason for such a holding is the principle that courts are law interpreting and not lawmaking and argues that we should not act in a peculiarly legislative matter.
We disagree and find this issue particularly appropriate for judicial decision. In the past, this Court has not abdicated its continuing responsibility to the citizens of this state to ensure that the law remains both fair and realistic as society and technology change. Hoffman v. Jones, 280 So.2d 431 (Fla. 1973). In fact, the law of torts in Florida has been modernized, for the most part, through the courts. As we said in Gates v. Foley, 247 So.2d 40, 43 (Fla. 1971):
It may be argued that any change in this rule should come from the Legislature. No recitation of authority is needed to indicate that this Court has not been backward in overturning unsound precedent in the area of tort law. Legislative action could, of course, be taken, but we abdicate our own function, in a field peculiarly nonstatutory, when we refuse to reconsider an old and unsatisfactory court-made rule.
In Gates, we held that the wife of a husband injured as a proximate result of negligence of another shall have a right of action against that person for loss of consortium. See also Hargrove v. Town of Cocoa Beach, 96 So.2d 130 (Fla. 1957), wherein we acknowledged that we must constantly be alive to the demands of justice.
To abstain from acting responsibly in the present case on the basis of legislative deference would be to consciously ignore a limited area where decisions by the lower courts of this state have created an illogical exception to the doctrine of comparative negligence adopted in Hoffman and the underlying philosophy of individual responsibility upon which the decisions of this Court succeeding Hoffman have been predicated. In addition to our emphasis on individual responsibility, the other common thread running through our decisions has been that the law will step in to protect people against risks which they cannot adequately guard against themselves.
*452 In Hoffman v. Jones, we decided that contributory negligence as a complete bar to a plaintiff's action was unjust. We reasoned that contemporary conditions must be met with contemporary standards which are realistic and better calculated to obtain justice among all parties involved, based upon the circumstances, and stated that it was inequitable to vest an entire accidental loss on one of the parties whose negligent conduct combined with the negligence of another to produce the loss. The best argument in favor of comparative negligence we found was that it simply provided a more equitable system of determining liability. We stated that in the field of tort law, the most equitable result to be achieved is to equate liability with fault. In adopting the doctrine of comparative negligence, we explained that under this theory a plaintiff is prevented from recovering "only that proportion of his damages for which he is responsible." 280 So.2d at 436 (emphasis supplied).
We reiterated this principle in Lincenberg v. Issen, 318 So.2d 386 (Fla. 1975), wherein we abolished the no-contribution among joint tortfeasors rule and expressly held:
[A]lthough this Court has in the past recognized as viable the principle of no contribution, in view of a re-examination of the principles of law and equity and in light of Hoffman and public policy, as a matter of judicial policy, it would be undesirable for this Court to retain a rule that under a system based on fault, casts the entire burden of a loss for which several may be responsible upon only one of those at fault, and for these reasons this Court recedes from its earlier decisions to the contrary.
318 So.2d at 391.
In Auburn Machine Works v. Jones, 366 So.2d 1167 (Fla. 1979), we rejected the "patent danger" doctrine and held that the obviousness of a hazard is not an exception to the manufacturer's liability but is a defense whereby the manufacturer may show that plaintiff did not use the reasonable degree of care required by the circumstances. The doctrine was found to be inequitable and unjust because it held a plaintiff to too high a standard of self-protection against a manufacturer's negligence and because it encouraged manufacturers to be outrageous in their design to eliminate safety devices and to make hazards obvious. Rather than applying a strict rule which precluded liability on the part of the manufacturer, this Court concluded that principles of comparative negligence should apply.
Because of the greater ability of the manufacturer to safeguard against injuries in automobile collision cases, we have held that under certain circumstances automobile manufacturers may be liable for a design or manufacturing defect that causes injury even though it did not cause the primary collision. In Ford Motor Co. v. Evancho, 327 So.2d 201 (Fla. 1976), we held that there was a duty of care resting on common law negligence that the manufacturer of an article must use reasonable care in design and manufacture of its product to eliminate the risk of foreseeable injury. Adopting the rationale of Larsen v. General Motors Corp., 391 F.2d 495 (8th Cir.1968), we made an observation which is just as relevant to the question before us as it was to our decision in Evancho, when we said:
Automobiles are made for use on the roads and highways in transporting persons and cargo to and from various points. This intended use cannot be carried out without encountering in varying degrees the statistically proved hazard of injury-producing impacts of various types... .
... While automobiles are not made for the purpose of colliding with each other, a frequent and inevitable contingency of normal automobile use will result in collisions and injury-producing impacts.
327 So.2d at 204. See also West v. Caterpillar Tractor Co., 336 So.2d 80 (Fla. 1976), wherein we imposed strict liability against manufacturers while at the same time acknowledging comparative or contributory *453 negligence as a defense under certain circumstances.
Logically and consistently applying these principles to the present case, we hold that the "seat belt defense" is viable in Florida. The seat belt has been proven to afford the occupant of an automobile a means whereby he or she may minimize his or her personal damages prior to occurrence of the accident. Spier v. Barker, 35 N.Y.2d 444, 323 N.E.2d 164, 363 N.Y.S.2d 916 (1974).
As we have already expressly acknowledged in Evancho, automobile collisions are foreseeable as are the so-called "second collisions" with the interior of the automobile. The seat belt has been a safety device required by the federal government for nearly twenty years. 15 U.S.C. §§ 1391-1425 (Supp. 1965-69), 32 Fed.Reg. 2408, 2415 (1967). In a 1982 study by the United States Department of Transportation, National Highway Safety Administration Technical Report entitled the "Effectiveness and Efficiency of Safety Belt and Child Restraint Usage," it is reported that the evidence for the effectiveness of safety belts in reducing deaths and injury severity is substantial and unequivocal. In view of the importance of the seat belt as a safety precaution available for a plaintiff's protection, failure to wear it under certain circumstances may be a pertinent factor for the jury to consider in deciding whether plaintiff exercised due care for his or her own safety. We agree with Judge Schwartz that:
[T]he failure to expend the minimal effort required to fasten an available safety device which has been put there specifically in order to reduce or avoid injuries from a subsequent accident is, on the very face of the matter, obviously pertinent and thus should be deemed admissible in an action for damages, part of which would not have been sustained if the seat belt had been used.[2]
Insurance Co. of North America v. Pasakarnis, 425 So.2d at 1143 (Fla. 4th DCA 1982) (Schwartz, J., dissenting).
Those jurisdictions adopting the "seat belt defense" have considered three different approaches: (1) plaintiff's nonuse is negligent per se; (2) in failing to make use of an available seat belt, plaintiff has not complied with a standard of conduct which a reasonable prudent man would have pursued under similar circumstances, and therefore he may be found contributorily negligent; and (3) by not fastening his seat belt, plaintiff may, under the circumstances of a particular case, be found to have acted unreasonably and in disregard of his or her best interests and, therefore, should not be able to recover those damages which would not have occurred if his or her seat belt had been fastened. Spier v. Barker; Annot., 80 A.L.R.3rd 1033 (1977).
Because Florida does not by statute require the use of available seat belts, we reject the rule that failure to wear a seat belt is negligence per se as have the majority of jurisdictions. See, e.g., Spier v. Barker. Cf. Sloan v. Coit International, Inc., 292 So.2d 15 (Fla. 1974); deJesus v. Seaboard Coastline Railroad, 281 So.2d 198 (Fla. 1973). We also reject the second approach because contributory negligence is applicable only if plaintiff's failure to exercise due care causes in whole or in part the accident rather than enhancing the severity of the injuries.[3] *454 Rather, we adopt the third approach which is similar to that taken by the Court of Appeals of New York in Spier v. Barker and the approach outlined by Judge Schwartz in his dissenting opinion. Nonuse of the seat belt may or may not amount to a failure to use reasonable care on the part of the plaintiff. Whether it does depends on the particular circumstances of the case. Defendant has the burden of pleading and proving that the plaintiff did not use an available and operational seat belt, that the plaintiff's failure to use the seat belt was unreasonable under the circumstances, and that there was a causal relationship between the injuries sustained by the plaintiff and plaintiff's failure to buckle up. If there is competent evidence to prove that the failure to use an available and operational seat belt produced or contributed substantially to producing at least a portion of plaintiff's damages, then the jury should be permitted to consider this factor, along with all other facts in evidence, in deciding whether the damages for which defendant may otherwise be liable should be reduced. Nonuse of an available seat belt, however, should not be considered by the triers of fact in resolving the issue of liability unless it has been alleged and proved that such nonuse was a proximate cause of the accident.[4]
To avoid confusion on the part of the jury in arriving at its verdict where seat belt evidence has been introduced and in order to clearly define the distinction between one's negligent contribution to the accident, on the one hand, and to his damages on the other, we agree with Judge Schwartz's statement in his dissenting opinion that the obvious solution is simply to add interrogatories to the special verdict form to elicit this information. For this reason we authorize the trial courts in appropriate cases to add the following interrogatories to the typical verdict form in automobile cases:
(a) Did defendant prove that the plaintiff failed to use reasonable care under the circumstances by failing to use an available and fully operational seat belt?
___ Yes ___ No
If your answer to question (a) is No, you should not proceed further except to date and sign this verdict form and return it to the courtroom. If your answer to question (a) is Yes, please answer question (b).
(b) Did defendant prove that plaintiff's failure to use an available and fully operational seat belt produced or contributed substantially to producing at least a portion of the plaintiff's damages?
___ Yes ___ No
If your answer to question (b) is No, you should not proceed further except to date and sign this verdict form and return it to the courtroom. If your answer to question (b) is Yes, please answer question (c).
(c) What percentage of plaintiff's total damages were caused by his (or her) failure to use an available and fully operational seat belt? ____%
These additional interrogatories should follow the interrogatory in the verdict which asks the jury to give the total amount of any damages sustained by the plaintiff and caused by the incident in question. If the jury returns a verdict for the plaintiff, finds that plaintiff's negligence was a contributing cause of the accident, and finds that plaintiff's failure to wear an available and fully operational seat belt produced or contributed substantially to producing at least a portion of plaintiff's damages, then the trial court in its final judgment should first reduce the total amount of damages by the percentage of the plaintiff's contributory negligence and then reduce this amount by the percentage attributable to plaintiff's failure to wear the seat belt.
*455 Applying this principle to the present case, we find that the trial court improperly struck the seat belt defense and erred in not permitting the proffered seat belt evidence to be submitted to the jury. The weight of such evidence is a matter within the province of the jury. We merely decide that under the particular facts of this case that it is admissible on the question of plaintiff's duty to use reasonable care under the circumstances.
Accordingly, the decision of the district court is quashed, and this cause is remanded for a new trial on the sole issue of whether and to what extent, if any, Pasakarnis's $100,000 verdict should be reduced as a result of his failure to wear an available and fully operational seat belt.
It is so ordered.
BOYD, OVERTON, McDONALD and EHRLICH, JJ., concur.
SHAW, J., dissents with an opinion, in which ADKINS, J., concurs.
SHAW, Justice, dissenting.
The unadorned question raised by the seat-belt defense is whether a plaintiff in an automobile personal injury action should be precluded from recovering for the full extent of his injuries because he failed to use an available seat belt. Various legal approaches favoring the defense have been advanced,[1] all of which have a common thread: a tortfeasor is responsible only for that which he proximately causes, and as the plaintiff has a duty to exercise ordinary care to protect himself from harm, the defendant is not liable for injuries which the plaintiff reasonably could have avoided by the use of an available seat belt. State statutes in some jurisdictions may permit the defendant to argue that violation of the statute, accompanied by proof that the violation substantially aggravated the plaintiff's injury, is negligence per se.
The majority opinion is premised upon the notion that the defense is consistent with Florida's progression from contributory to comparative negligence and that "by not fastening his seat belt, plaintiff may, under the circumstances of a particular case, be found to have acted unreasonably and in disregard of his or her best interests and, therefore, should not be able to recover those damages which would not have occurred if his or her seat belt had been fastened." This approach ignores the fact that the legislature has specifically prohibited, in any civil action, the admission of evidence that a parent or legal guardian of a child has not provided and used a child passenger restraint. This prohibition of the consideration of such evidence as comparative negligence is in the very section which requires the use of child restraint devices. § 316.613(1) and (3), Fla. Stat. (1983). Under this section, a parent who has failed to secure a child in the restraint device can, nonetheless, sue for the wrongful death of the child caused by the negligent driving of the defendant, and the defendant cannot introduce evidence that the parent had not secured the child in a restraint device. It seems to me that there would be a greater duty for a parent to protect a helpless child, especially when required by law, than to protect himself. Yet under Florida Statutes even a violation of that duty cannot be used to reduce damages.
Despite statistics determining that seat belts can be effective in reducing the number of serious injuries and deaths caused by automobile accidents,[2] a vast majority of the motoring public declines to use them.[3] *456 If one accepts the proposition that there is no common law or statutory duty to wear seat belts, and that the wearing of such belts has been rejected by a majority of the public despite the urging of industry and the federal government, then the duty this decision places upon the Florida motorist is at the very least based upon a debatable public policy determination best left to the legislature. Basic to the majority opinion is the concept of avoidable consequences, but even that concept is not used in the traditional sense. Under the rule of avoidable consequences, the plaintiff is required to exercise reasonable care not to exacerbate the injuries that were caused by the negligence of the defendant. W. Prosser, The Law of Torts § 65 at 423 (4th ed. 1971). The plaintiff's conduct prior to the defendant's tort normally is judged according to either the doctrine of contributory negligence or that of comparative negligence. The majority's defense therefore not only smacks of judicial policy making, but also offends traditional notions of tort law.
In light of the justifiable hue and cry from lawyers, judges, and litigants that jury trials are becoming too costly, too lengthy, and too complex,[4] I question whether seat-belt evidence ought to be added to the recently-introduced concept of comparative negligence. Seeing no pressing need for the introduction of this new defense into the field of automobile personal injury actions in Florida, I am reluctant to tread on established legal principles and impose a new duty upon the Florida motoring public, absent legislative action. The majority decision establishing this duty creates a host of technical problems. It is unclear in my mind when the defense is available and when the duty to wear seat belts arises. Is it available in an intentional tort action? What is the duty of a pregnant or handicapped person to wear the safety device? These answers will no doubt be provided via future litigation.
Under our current law of comparative negligence, the jury has only to determine the percentage of fault of the parties. Lawrence v. Florida East Coast Railway, 346 So.2d 1012 (Fla. 1977). The seat-belt defense introduces another element. It requires the defendant to offer expert testimony to establish the causal connection between the non-use of the seat belt and aggravation of the injury. The plaintiff is called upon to counter the defendant's expert by calling experts of his own. The jury will be called upon to evaluate conflicting expert testimony on such technical elements as the crash behavior of the vehicle, the trajectory of the plaintiff's body in the crash, the relationship of the vehicle crash event to occupant kinematics, the particular injury suffered, the trajectory which a restrained occupant would have taken, and the extent of lesser injuries which the restrained occupant would have sustained as a result of the impact.[5] This battle of experts, in addition to adding to the costs, length, and complexity of the trial, might very well become the trial's focal point, completely overshadowing the defendant's tortious conduct in causing the accident. If the plaintiff's automobile contains a seat belt, I can think of few instances where defense counsel would not feel compelled to call a seat-belt expert or experts, resulting in the plaintiff's counsel doing likewise. Thus the proliferation of this new species of expert witness, the seat-belt expert.
The question in my mind is whether, in light of such technical difficulties and cost factors, the introduction of seat-belt evidence in the laws of Florida is merited. It is my opinion that it is not.
In sum, I disagree with the majority for two reasons. First, in view of the technical difficulties, cost factors, and problematical *457 nature of the public policy which the majority establishes, I am not persuaded that the decision is wise public policy. Second, the question of the enforced use of safety belts has been before the legislature, which has not acted to impose such a requirement. On the contrary, the legislature has established a requirement that restraining devises be used for infants only. § 316.613, Fla. Stat. (1983). Significantly, in my view, our elected representatives have chosen not to require seat belts or restraining devices for children above five years of age or for adults when it could easily have done so. I consider it an unwarranted and inappropriate use of judicial power to impose by fiat a debatable public policy on an unwilling public.
I respectfully dissent.
ADKINS, J., concurs.
NOTES
[1] Chapter 316.613, Florida Statutes, requiring child restraint devices for children five years of age or under became effective July 1, 1983.
[2] Judge Schwartz, in his dissenting opinion, asserted that this very practical viewpoint is the essential basis of those decisions which have accepted the viability of the "seat belt defense." Melia v. Ford Motor Co., 534 F.2d 795 (8th Cir.1976); Mays v. Dealers Transit, Inc., 441 F.2d 1344 (7th Cir.1971); Henderson v. United States, 429 F.2d 588 (10th Cir.1970); Caiazzo v. Volkswagenwerk, A.G., 468 F. Supp. 593 (E.D.N.Y. 1979), modified on other grounds, 647 F.2d 241 (2d Cir.1981); Wilson v. Volkswagen of America, 445 F. Supp. 1368 (E.D.Va. 1978); Pritts v. Walter Lowery Trucking Co., 400 F. Supp. 867 (W.D.Pa. 1975); Benner v. Interstate Container Corp., 73 F.R.D. 502 (E.D.Pa. 1977); Uresky v. Fedora, 27 Conn.Sup. 498, 245 A.2d 393 (1968); Spier v. Barker, 35 N.Y.2d 444, 323 N.E.2d 164, 363 N.Y.S.2d 916 (1974); Sams v. Sams, 247 S.C. 467, 148 S.E.2d 154 (1966); Sonnier v. Ramsey, 424 S.W.2d 684 (Tex.Civ.App. 1968); Hernke v. Coronet Ins. Co., 72 Wis.2d 170, 240 N.W.2d 382 (1976); Bentzler v. Braun, 34 Wis.2d 362, 149 N.W.2d 626 (1967).
[3] A different situation would be presented if the defendant alleged and proved that the plaintiff's negligent failure to wear a seat belt was a contributing cause of the accident.
[4] There is no contention that plaintiff's failure to wear a seat belt was a proximate cause of the accident in this case.
[1] See, e.g., Note, The Seat Belt Defense: A Comprehensive Guide for the Trial Lawyer and Suggested Approach for the Courts, 56 Notre Dame Law. 272, 275-284 (1980); Note, Buckling Up for Safety: Should Florida Reconsider the Seat Belt Defense?, 13 Stetson L.Rev. 160 (1983); Note, The Seat Belt Defense: Should Coloradoans Buckle Up for Safety?, 50 U.Colo.L.Rev. 375 (1979-80).
[2] United States Dept. of Transportation, National Highway Traffic Safety Administration, The Automobile Safety Belt Fact Book (May 1982 rev.).
[3] Only 14% of the motoring public used the belts the first half of 1983, up 3% from 1982. United States Dept. of Transportation, National Highway Traffic Safety Administration, National Safety Belt Usage Program, Progress and Assessment Report on the National Safety Belt Usage Program (Sept. 1983).
[4] Chief Justice Warren Burger, in his Annual Message on the Administration of Justice before the American Bar Association (Feb. 12, 1984), urged lawyers to lead a search for reform of America's legal system, which has become "too costly, too painful, too destructive, too inefficient for a truly civilized people."
[5] 56 Notre Dame Law. at 282, n. 48.