545 So.2d 362 (1989)
Shirley A. DeLONG, Natalie Y. DeLong, and Richard DeLong, Appellants,
v.
The WICKES COMPANY D/B/a Wickes Lumber Centers, and Enrique L. Santiago, Appellees.
No. 88-00895.
District Court of Appeal of Florida, Second District.
May 26, 1989.
Rehearing Denied May 29, 1989.
*363 Paul Castagliola and Candace S. Whitaker of Riden & Goldstein, P.A., St. Petersburg, for appellants.
Troy J. Crotts of Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., St. Petersburg, for appellees.
PARKER, Judge.
Shirley and Richard DeLong, wife and husband, and Natalie DeLong, their daughter, appeal the trial court's judgment awarding monetary damages in their favor after the court denied their motions for new trial. We affirm in part and reverse in part with directions.
Mrs. DeLong and her daughter were involved in a serious collision with Enrique L. Santiago, who was driving a truck owned by The Wickes Company d/b/a Wickes Lumber Centers. The DeLongs filed suit against Wickes Lumber, its employee, Santiago, and The Insurance Company of North America,[1] for personal injuries sustained by Mrs. DeLong and her daughter as a result of that accident. The complaint included a claim by Mr. DeLong for loss of consortium. The accident occurred when Santiago drove the Wickes Lumber truck through a yellow traffic light, striking the DeLongs' "brand new" 1982 Ford Escort. Mrs. DeLong was driving the vehicle and was attempting to complete a left turn when she collided with the oncoming truck. Mrs. DeLong's daughter and another person were passengers in the car.
The expert medical testimony at trial was contradictory on the issue of whether Mrs. DeLong and her daughter sustained permanent disabilities as a result of the accident. As to Mrs. DeLong, the medical evidence ranged from a finding by a Dr. Nach of no permanent injury to a twenty percent disability rating from her attending chiropractor, Dr. Snair. The independent medical examiner (IME) accorded Mrs. DeLong a five percent rating based solely upon her subjective complaints. The medical evidence with regard to the daughter was more consistent in that all the practitioners concluded that she suffered some degree of permanent injury, which included facial scarring; however, they disagreed as to the extent of that disability.
There was evidence in the record from Dr. Nach that Mrs. DeLong had reached "maximum medical improvement" and Natalie DeLong was "near maximum medical improvement," with an excellent prognosis as to both patients. The medical expenses incurred by both Mrs. DeLong and her daughter were admitted into evidence without objection. The reasonableness and necessity of those expenses was greatly contested at trial, in particular the chiropractic treatment received by the two women, which in some instances duplicated the physical therapy recommended by various physicians as the prescribed treatment. Further, Dr. Snair was the only person to recommend continued chiropractic care to both patients for an indefinite period. Considerable medical opinion was offered that neither patient would benefit from further medical or chiropractic care.
*364 Evidence was also introduced at the trial that Mrs. DeLong and her daughter suffered from physical conditions which predated the accident in question. Mrs. DeLong was diagnosed as having a misalignment of her spine, and her daughter suffers from congenital scoliosis. Dr. Bialis, a plastic surgeon who was treating Natalie DeLong for facial scars related to the accident, testified that some of those scars were not caused by the accident but resulted from acne. In fact, Dr. Bialis stated that he referred her to a dermatologist for her acne condition. The IME testified regarding Mrs. DeLong that her X-rays were consistent with that of a 46-year old woman, with or without an accident, and that the normal wear and tear she was experiencing in her knee was occasioned by arthritis due to aging.
The defense sought to impeach Natalie DeLong regarding a second accident in which she was involved after the instant accident. Although Natalie attempted to characterize this later accident as minor and insignificant, the defense established that following the second accident, Natalie's visits to Dr. Snair were more frequent than immediately prior to that accident. In addition, it was brought out that Natalie told Dr. Snair about this second accident but neglected to mention it in her responses to interrogatories submitted by the defense, which specifically inquired about her involvement in other accidents.
There was additional testimony presented regarding lost wages and pain and suffering by Mrs. DeLong and her daughter. According to the daughter, she lost two months of work, in which she would have earned $250 per week, as a result of the accident. After the two months, she obtained similar employment to that before the accident, where she remained until she got married and moved to New York.
At the time of the accident, Mrs. DeLong was not employed. However, she stated at the trial that she intended to seek employment as a surgical nurse, which was the type of work she had been doing for the past ten years in New York. Two months had elapsed between the time the family arrived from New York and the time of the accident. Several months after the accident Mrs. DeLong obtained a job as a sales clerk at Robinson's Department Store at minimum wage, where she worked for three years until she became employed as a nursing home supervisor. As a nursing home supervisor, she now earns $10 per hour, more than she did working as a surgical nurse in New York. She estimated the difference in the salary she would have received as a nurse as opposed to a sales clerk in those three years to be approximately $70,000. Her testimony does not establish, however, that during those three years as a sales clerk she was unable because of the accident to obtain the type of employment which she has presently.
Mr. DeLong's consortium claim was grounded, among other reasons, upon three weeks of total care of his wife immediately following the accident, with continued care for a lengthy period of time, during which he was obligated to perform all the household duties previously the province of his wife. In addition, during that time he had to forego his profession in real estate sales and had to perform additional jobs in order to support the family. The uncontradicted evidence showed that the DeLongs' lifestyle and sexual relations were adversely affected by the accident.
There was also testimony presented regarding the effect of the DeLongs' failure to wear seat belts. The IME testified to his belief that had Mrs. DeLong been wearing a seat belt she would have prevented approximately fifty percent of the damage she suffered, and her daughter's injuries, had she worn a seat belt, would have been reduced by seventy-five percent. The evidence concerning the seat belts consisted of the testimony of the investigating officer that seat belts were available in the DeLong vehicle and that Mrs. DeLong and her daughter were not wearing them at the time of the accident. In addition, photographs taken of the accident confirmed the vehicle contained seat belts. The record also reflected that the vehicle was purchased new, four to five months prior to the accident.
*365 The jury returned a verdict in favor of the daughter in the sum of $10,409.90, and for Mrs. DeLong in the amount of $3,546.49.[2] This second amount was then reduced by the jury's finding that Mrs. DeLong was twenty-five percent comparatively negligent. Further, the jury found the failure of Mrs. DeLong and her daughter to wear seat belts caused fifty percent of the total damages to each. The jury awarded zero damages to Mr. DeLong on his consortium claim. Pursuant to the jury's verdict, final judgment was entered on October 4, 1987, awarding Mrs. DeLong and her daughter a total sum of $5,233.64[3] and noting that Mr. DeLong was to receive no damages.
Thereafter, counsel for the DeLongs moved for a new trial and for additur. By separate orders, the motions for additur were granted, and the motions for new trial were denied. Wickes Lumber filed notice of acceptance of additur, and a revised final judgment was entered awarding Mrs. DeLong $2,659.87, her daughter $10,049.94, and Mr. DeLong $2,000. The DeLongs now appeal the trial court's decision to deny their motions for new trial and its refusal to grant a directed verdict on the seat belt defense issue.
At the outset, we must address an apparent error in the record with regard to the amount of damages awarded to the daughter. From the revised final judgment, it appears as though the trial judge perceived the amount of the verdict to be $10,049.94, rather than the correct amount of $10,409.90. On remand, the judge should correct the judgment to reflect the proper amount as stated in the verdict form and revisit its additur in light of that correction.

SEAT BELT DEFENSE
The seat belt defense has been recognized in Florida. Insurance Company of North America v. Pasakarnis, 451 So.2d 447 (Fla. 1984).
[E]vidence of failure to wear an available and fully operational seat belt may be considered by the jury in assessing a plaintiff's damages where the "seat belt defense" is pled and it is shown by competent evidence that failure to use the seat belt produced or contributed substantially to producing at least a portion of the damages.
Id. at 449 (emphasis added).
It is clear from Pasakarnis that the burden to establish the seat belt defense is upon the party asserting it. In this case, Wickes Lumber did not meet its burden of presenting evidence that the seat belts were operational by the testimony and photographs establishing that the DeLong vehicle was purchased new a few months earlier and contained seat belts. The defense is not entitled to a seat belt defense instruction to the jury where there is no evidence as to the operability of the seat belts other than the fact that the automobile was in good condition. Youngentob v. Allstate Ins. Co., 519 So.2d 636 (Fla. 4th DCA 1987). We recognize that the first district has permitted the seat belt defense to be considered by the jury where testimony established that the vehicle in question was relatively new and was equipped with seat belts that "clicked." American Automobile Ass'n v. Tehrani, 508 So.2d 365 (Fla. 1st DCA 1987). In that case, the "click" constituted some evidence that the belts snapped closed and were, therefore, operational. We do not have any such additional evidence in this case. Because of the failure of proof by Wickes Lumber on this issue, the trial court should have directed the verdict on the seat belt defense for the DeLongs, as requested by the DeLongs' counsel, and removed that issue from the jury's consideration.

NEW TRIAL
Based upon the record before us, the jury's award of zero damages on Mr. DeLong's claim for loss of consortium was error. When the injured spouse is awarded damages resulting from the negligence of a third party, and the spouse claiming loss of consortium has presented substantial and *366 unrebutted testimony to support that claim, the latter spouse is entitled to at least nominal damages. Albritton v. State Farm Mutual Automobile Ins. Co., 382 So.2d 1267 (Fla. 2d DCA 1980). There was substantial, competent evidence that Mrs. DeLong sustained injuries as a result of an automobile accident caused primarily by the negligence of a Wickes Lumber employee. Further, the testimony presented at the trial on the consortium claim was substantial and not rebutted so as to require a jury award to Mr. DeLong of at least nominal damages.
Because the zero amount awarded to Mr. DeLong was clearly inadequate in light of the facts and circumstances of this case, we believe the trial court acted appropriately when it ordered a $2,000 additur for Mr. DeLong in lieu of a new trial. See § 768.043(1), Fla. Stat. (1987); Adams v. Wright, 403 So.2d 391 (Fla. 1981); City of Jacksonville v. Baker, 456 So.2d 1274 (Fla. 1st DCA 1984), review denied, 464 So.2d 554 (Fla. 1985). The trial court was under no obligation to grant a new trial on the consortium issue since appellees, the party adversely affected by the additur, accepted the additur. See § 768.043(1), Fla. Stat. (1987). Nor do we find any abuse of discretion based on the present record in the amount of the additur ordered by the trial court. The additur, in effect, cured the jury's misconception of the law on the consortium issue. But see Butte v. Hughes, 521 So.2d 280 (Fla. 2d DCA 1988) (new trial demanded on loss of consortium claim where trial court denied both the claiming spouse's motion for new trial and motion for additur). We hold therefore that the additur as to Mr. DeLong effectively corrected the jury's error regarding his claim for loss of consortium, thereby avoiding the necessity of granting a new trial.
Mrs. DeLong and her daughter also sought a new trial on their separate claims, which was denied by the trial court. In reviewing an order which denies a motion for new trial, the test we must apply is "`[i]f reasonable men could differ as to the propriety of the action taken by the trial court, then there is no abuse of discretion,' and the order must stand undisturbed by the appellate court." Fitzgerald v. Molle-Teeters, 520 So.2d 645, 648 (Fla. 2d DCA 1988) (quoting Ford Motor Co. v. Kikis, 401 So.2d 1341, 1342 (Fla. 1981)).
From our review of the jury's verdict, we may presume that they awarded Mrs. DeLong and her daughter the amount of medical expenses which they had incurred as of the date of the trial. We must point out, however, that the reasonableness and necessity of some of those expenses was seriously disputed at trial, so that it would be consistent with that evidence for the jury not to award a portion of those amounts claimed as medical expenses. See Crutcher Resources Corp. v. Rayner, 283 So.2d 392 (Fla. 2d DCA 1973) (a jury is not precluded from inquiring into the reasonableness and necessity of medical expenses). Assuming the jury awarded Mrs. DeLong and her daughter the exact amount of their medical costs, we must decide whether their award of only medical damages was against the manifest weight of the evidence.
In Shaw v. Puleo, 159 So.2d 641 (Fla. 1964), the supreme court stated:
The question of adequacy or inadequacy of damages is governed by this court's decision in Radiant Oil Co. v. Herring, 146 Fla. 154, 200 So. 376, [(1941)] wherein we said:
"It has been held that under the old common law rule, a motion for new trial for inadequacy of damages should not be granted but the general rule now seems to be that a verdict for grossly inadequate damages stands on the same ground as a verdict for excessive or extravagant damages and that a new trial may as readily be granted in the one case as the other. Such verdicts will not be set aside for the mere reason that they are less than the Court thinks they should be. It must be shown that the verdict was induced by prejudice or passion, some misconception of the law or the evidence or it must be shown that the jury did not consider all the elements of damage involved, missed a consideration of the issues submitted or failed to discharge *367 their duty as given them by the Court's charge. 20 R.C.L. 283."
In reviewing a jury verdict in a case wherein the trial court has denied a motion for new trial alleging inadequacy of damages, an appellate court is bound to remember that the test of inadequacy of a verdict is not what the reviewing court would have decided had it tried the case, but whether it can be said that the jurors as reasonable men could not have found the verdict they did.
Id. at 644 (citations omitted). See also Schmidt v. Tracey, 150 So.2d 275 (Fla. 2d DCA 1963), cert. denied, 159 So.2d 645 (Fla. 1964).
The DeLongs maintain that the jury erred in failing to award any damages for pain and suffering, loss of earnings, and future medical expenses. Ordinarily in automobile accident cases such as this, before a jury may render an award for pain and suffering, there has to be a threshold finding of permanent injury. See McClellan v. Industrial Fire & Casualty Ins. Co., 475 So.2d 1015 (Fla. 4th DCA 1985); § 627.737(2), Fla. Stat. (1987).[4] In the case at hand, a jury finding of no permanent injury as to Mrs. DeLong and a one to two percent permanent disability as to the daughter, as well as permanent facial scarring, was certainly consistent with the evidence presented at trial. Under McClellan, that finding regarding the mother would preclude any damage award for her pain and suffering. If we disregard for purposes of deciding this case that such a threshold finding of permanency was necessary, we still cannot find that the jury's failure to award either appellant pain and suffering damages was contrary to the greater part of the evidence. On the contrary, reasonable jurors could have concluded based upon the evidence in this case that they were not entitled to such damages.
The jury could have attributed any pain and suffering testified to by Mrs. DeLong and her daughter to other causes. For instance, the record reflects that Mrs. DeLong suffers from a preexisting spinal condition, and according to the testimony of the IME, she shows signs of arthritis ordinarily associated with aging. As previously stated, the daughter also has a preexisting scoliosis problem, which is congenital and not related to the accident. A jury could disbelieve the daughter's testimony regarding pain and suffering in light of her returning back to work and a normal lifestyle two months following the accident, or they could ascribe that pain to her congenital condition. See Rayner, 283 So.2d at 393.
The jurors may also have attributed any permanent injury or pain and suffering by the daughter to a second accident in which she was involved, and which she neglected to mention in her response to interrogatories propounded by Wickes Lumber. Regarding the daughter's facial scarring, part of those scars were unrelated to the accident but were caused by acne. As a result, the jury may not have found any significant scarring related solely to the accident for which she would be entitled to pain and suffering damages.
The jurors also could have concluded reasonably that future medical expenses were not warranted as to either Mrs. DeLong or her daughter. The greater part of the medical testimony was that they had both reached near to or maximum level of medical improvement with an excellent prognosis and that they would not benefit from any further medical or chiropractic treatment.
Lastly, with regard to the evidence of lost wages, we cannot say that the daughter's proof of those damages was contradicted or attributable to other causes. The daughter established that she lost about $2,000 in wages as a result of the accident. The jury's failure to award that amount as damages was contrary to the weight of the evidence; nonetheless, it does not warrant a new trial in this case in light of the trial court's granting of an *368 additur in an amount greater than her lost wages, which as previously stated was accepted by appellees. See § 768.043, Fla. Stat. (1987); Adams, 403 So.2d at 391; Baker, 456 So.2d at 1274.
With regard to any future loss of earnings on the daughter's part, the jury could have believed that any such loss was caused by her decision to leave her job and get married and not by the accident. It was also reasonable for the jury to decide that Mrs. DeLong's claim of $70,000 in lost wages was not justified. The jury may not have believed Mrs. DeLong's statement that she intended to obtain a job as a surgical nurse once in Florida, since as of the time of the accident two months had passed since the family moved from New York to Florida, and yet she had not obtained a job. When she began working several months after the accident, she took a job as a sales clerk rather than as a nurse. The jury may well have surmised that her inability to find a job as a nurse was related to market conditions at the time and not the accident, since eventually she did obtain employment as a nurse for a higher salary than she was earning in New York. Nor did Mrs. DeLong make a case for future loss of earnings, since at the time of the trial she still retained that same job as nursing home supervisor.
We must assume that the jury considered all elements of damages. See City of Miami v. Smith, 165 So.2d 748 (Fla. 1964). For the reasons explained above, the jury could well have reached the verdict it did in a manner consistent with the evidence in the record, with the exception of its lack of an award of lost wages to the daughter and its zero award to Mr. DeLong on his consortium claim. Because their failure to consider these two elements of damages is more than adequately remedied by the trial court's additur, assented to by appellees, see Baker, we do not find that a new trial on the issue of damages is mandated in this case. Applying the Fitzgerald test, we conclude that reasonable men could differ as to the propriety of the trial court's decision to deny the DeLongs' motions for new trial, and as such, there is no abuse of discretion.
Accordingly, we reverse the trial court only to the extent that it denied the DeLongs' motion for a directed verdict on the seat belt issue. Otherwise, the judgment is affirmed. We remand the case to the trial court and direct that it correct the awards to Mrs. DeLong and her daughter to omit the reduction for the seat belt defense, and to make the necessary correction to the daughter's award to conform with the precise amount of the verdict.
Affirmed in part, reversed in part, and remanded with instructions.
SCHOONOVER, A.C.J., concurs.
PATTERSON, J., dissents.
PATTERSON, Judge, dissenting.
I dissent from the majority opinion and would grant a new trial to each of the plaintiffs. As to Richard DeLong, the unrefuted evidence establishes a claim for loss of consortium damages upon which the jury returned a zero verdict. To arrive at such a verdict the jury either misconstrued the law or ignored the trial court's jury instructions on damages. Under these circumstances a new trial is mandated. Kinne v. Burgin, 311 So.2d 695 (Fla. 3d DCA 1975). Although the majority concedes that Richard DeLong's verdict was clearly inadequate, they conclude that the award of a $2,000 additur to Mr. DeLong corrected the jury's error. The concept of additur contemplates that the jury finds an entitlement to damages and returns an inadequate verdict in light of the evidence. In this case, the jury returned what amounts to a no liability verdict as to Mr. DeLong. Additur should not be used to reverse the jury's verdict on liability. A new trial is the only proper remedy. The cases cited by the majority in support of its position relate to additur in general and do not address the propriety of applying additur to a zero verdict situation.
As to Natalie DeLong, the evidence is uncontroverted that she suffered permanent facial scarring, pain and suffering and the loss of wages as a result of this accident. The record is clear that the jury *369 verdict was in the amount of Natalie DeLong's medical expenses. It must, therefore, be concluded that the jury made no award for disfigurement, pain and suffering and loss of wages. Gonzalez v. Westinghouse Electric Corp., 463 So.2d 1229 (Fla. 4th DCA 1985). Such a verdict, in light of the evidence, is grossly inadequate as a matter of law and mandates the granting of a new trial as to damages. Thornburg v. Pursell, 446 So.2d 713 (Fla. 2d DCA 1984); Skelly v. Hartford Casualty Ins. Co., 445 So.2d 415 (Fla. 4th DCA 1984); Stevens v. Mount Vernon Fire Ins. Co., 395 So.2d 1206 (Fla. 3d DCA 1981).
The fact that the trial court granted Natalie DeLong an additur in an apparent effort to correct the improper submission of the seat belt defense issue to the jury is of no consequence. The additur merely restores that portion of the medical expenses only award which the jury reduced by a finding of contributory negligence. It does not address the fact that the jury ignored disfigurement, pain and suffering and loss of wages damages that Natalie DeLong was entitled to recover. As to those damages, the jury by returning a zero verdict found no entitlement, thus making her situation similar to that of her father. The verdict was incurably defective when returned, and the reinstatement of a portion of the medical expense damages is not relevant.
In regard to Shirley DeLong, the orthopedic surgeon called by the defense testified that she had sustained a five percent permanent disability as a result of this accident. This evidence, together with the testimony of the plaintiffs' physicians and the severity of the accident, renders a zero verdict for all damages of Shirley DeLong except medical expenses likewise improper.
It is evident from the closing argument of defense counsel that the seat belt defense was made a primary feature of the trial. The same orthopedic surgeon testified for the defense as to the effect upon the DeLongs' not wearing seat belts. I question the expert qualifications of a medical doctor to give an opinion as to the aerodynamics involved in a vehicular collision.[5] I conclude that this testimony, conceded to be improper for lack of a proper predicate, was of such a dominant character that it well could have tainted the attitude of the jury in all aspects of their deliberations. This factor alone could have justified the granting of a new trial.
I would, therefore, reverse and remand for a new trial on damages as to each of the plaintiffs.
NOTES
[1] The insurance carrier for Wickes Lumber was voluntarily dismissed by joint stipulation of the parties as a defendant in the lawsuit.
[2] These amounts awarded to Mrs. DeLong and her daughter correspond with the exact amount of their medical bills.
[3] This figure does not appear to coincide with the jury's verdict according to our calculations.
[4] Evidently, it appears from the record that the jury was not instructed on this aspect of the no-fault law.
[5] See Bentzler v. Braun, 34 Wis.2d 362, 388, 149 N.W.2d 626, 641 (1967):

The only witness offered was an orthopedic surgeon, who, although qualified in his chosen profession, did not purport to be able to testify what effect the use of seat belts might have had in this particular case. The record supports the trial court's determination that there was no proof whatsoever to show that Janet Bentzler's injuries were caused or aggravated by the failure to use the seat belts. In the absence of credible evidence by one qualified to express the opinion of how the use or nonuse of seat belts would have affected the particular injuries, it is improper for the court to permit the jury to speculate on the effect that seat belts would have had.