630 So.2d 1060 (1994)
BULLDOG LEASING COMPANY, INC., et al., Petitioners,
v.
Susan A. CURTIS, Respondent.
No. 80574.
Supreme Court of Florida.
January 27, 1994.
*1061 Joseph H. Lowe of Marlow, Connell, Valerius, Abrams, Lowe & Adler, Miami, for petitioners.
Thomas Hoadley of Hoadley & Noska, P.A., West Palm Beach, for respondent.
OVERTON, Justice.
Bulldog Leasing Co., Inc., Heavy Machinery & Tool Transporters, Inc., Suwannee Transport Co., Inc., and Crawford Catia seek review of Curtis v. Bulldog Leasing Co., 602 So.2d 611 (Fla. 4th DCA 1992).[1] In its decision, the district court held that the trial judge erred in allowing Bulldog Leasing to present the "seat belt defense" to the jury because no evidence existed in the record to prove that the seat belts in Susan A. Curtis's new vehicle were "operational." The district court also found that the jury's verdict form did not clearly reflect how much of the jury's allocation of negligence was attributable to Curtis's failure to wear her seat belt. Consequently, the district court remanded this cause for a new trial on both liability and damages. We find that the district court misapplied the operational seat belt requirement set forth in Insurance Co. of North America v. Pasakarnis, 451 So.2d 447 (Fla. 1984). We further find that the district court's decision to remand this cause for a new trial on both liability and damages conflicts with other district court decisions. See Smith v. Holy Temple Church of God in Christ, Inc., 566 So.2d 864 (Fla. 1st DCA 1990); Knapp v. Shores, 550 So.2d 1155 (Fla. 3d DCA 1989), review denied, 563 So.2d 634 (Fla. 1990); DeLong v. Wickes Co., 545 So.2d 362 (Fla. 2d DCA 1989); Devolder v. Sandage, 544 So.2d 1046 (Fla. 2d DCA 1989).[2] For the reasons expressed, we quash the decision of the district court in the instant case.
The record reflects that on June 5, 1981, Curtis struck the rear of Bulldog Leasing's eight-foot-wide tractor-trailer. Because of a prior accident, the tractor-trailer was parked, at the time of this accident, on Interstate 95, with six feet of the tractor-trailer parked on the shoulder and two feet extending into the left-hand lane of the highway. Testimony established that Curtis's automobile was traveling at approximately fifty-six miles an hour when it struck the tractor-trailer. No evidence existed to show that she applied her brakes before impact.
During the trial, Curtis admitted that she was not wearing her seat belt at the time of the accident. Additionally, she identified *1062 photographs showing seat belts in her vehicle, and she stated that she had only owned the car for a few months before the accident. Curtis's husband (her fiance at the time of the accident) testified that the car had been purchased new three or four months before the accident and that it was equipped with shoulder harnesses and seat belts. Bulldog Leasing's accident reconstruction expert testified that, had Curtis used her seat belt, her injuries would have been less severe.
On a special verdict form, the jury found that Curtis was 90% negligent in causing the accident and that Bulldog Leasing was 10% negligent. On these findings, the court reduced Curtis's total awarded damages from $275,000 to $27,500. Additionally, in affirmatively answering the question, "Did the Plaintiff, Susan Curtis' failure to use the seat belt produce or contribute substantially to producing any of the Plaintiff, Susan Curtis' damages," the jury found that Curtis's failure to use her available and fully operational seat belt caused 67.5% of her total damages.[3]
On appeal, the district court found the evidence insufficient to warrant instructing the jury on the seat belt defense, stating:
There is evidence that the accident vehicle was equipped with an available seat belt, but nothing to show that this particular seat belt was operational upon the occasion of the accident or at any time reasonably close thereto. See Knapp v. Shores, 550 So.2d 1155 (Fla. 3d DCA 1989), rev. denied, 563 So.2d 634 (Fla. 1990).
Curtis, 602 So.2d at 612. In Knapp, the decision relied on by the district court, the court placed stringent requirements on defendants wishing to assert the seat belt defense. In that case, the court determined that neither testimony that the equipment in the car was in working order nor testimony that the plaintiff sometimes wore the seat belt was sufficient to establish the seat belt's full operational ability. The Knapp court further noted that Florida courts have invariably required defendants to show competent evidence that, at or near the time of the accident, seat belts were anchored to the *1063 vehicle and contained buckles that closed securely before allowing them to assert the seat belt defense. In the instant case, the district court recognized the difficulty defendants have in attempting to assert this defense, stating:
As we see it, it cannot be easy for the defense to establish whether or not a seat belt is fully operational short of going to the accident vehicle and inspecting it or being fortunate enough to obtain a witness who has used it. Few drivers examined on the stand would know whether their seat belts were "fully operational," even if there was a "click" when the seat belt was inserted into the buckle.
Curtis, 602 So.2d at 612 (citation omitted). Under the facts of this case, the district court then reversed and remanded for a new trial on the question of both liability and damages, concluding that confusion in the special interrogatory verdict form required a new trial on all issues.
In a dissenting opinion, Judge Anstead found that the record contained sufficient evidence to submit the seat belt defense to the jury. He also found that the remand for a new trial on both liability and damages was contrary to the position of other district courts.
At the outset, it is important that we review our holding in Pasakarnis. In that opinion, we rejected the rule that the failure to wear a seat belt was negligence per se because, at that time, the legislature had not enacted a statute requiring the use of seat belts.[4] Further, we rejected the use of contributory negligence as a means to implement the seat belt defense. Instead, we adopted what we termed the "third approach," which had been set forth by the Court of Appeals of New York in Spier v. Barker, 35 N.Y.2d 444, 363 N.Y.S.2d 916, 323 N.E.2d 164 (1974), and explained by Judge Schwartz in his dissent in Insurance Co. of North America v. Pasakarnis, 425 So.2d 1141, 1142 (Fla. 4th DCA 1982) (Schwartz, J., dissenting), quashed, 451 So.2d 447 (Fla. 1984). In setting forth the rule as to how the seat belt defense should be applied in Florida, we stated:
Nonuse of the seat belt may or may not amount to a failure to use reasonable care on the part of the plaintiff. Whether it does depends on the particular circumstances of the case. Defendant has the burden of pleading and proving that the plaintiff did not use an available and operational seat belt, that the plaintiff's failure to use the seat belt was unreasonable under the circumstances, and that there was a causal relationship between the injuries sustained by the plaintiff and plaintiff's failure to buckle up. If there is competent evidence to prove that the failure to use an available and operational seat belt produced or contributed substantially to producing at least a portion of plaintiff's damages, then the jury should be permitted to consider this factor, along with all other facts in evidence, in deciding whether the damages for which defendant may otherwise be liable should be reduced. Nonuse of an available seat belt, however, should not be considered by the triers of fact in resolving the issue of liability unless it has been alleged and proved that such nonuse was a proximate cause of the accident.
Pasakarnis, 451 So.2d at 454 (emphasis added). We then approved a special interrogatory verdict form to be used in cases where the seat belt defense is presented to the jury.[5] That special verdict form included the *1064 term "fully operational seat belt," which the district courts have selected as a critical requirement for a defendant to prove before asserting this defense.
Notably, at the time of the accident at issue in Pasakarnis, there were vehicles on the road without seat belts. Additionally, because some vehicle owners did not like seat belts, they made their seat belts non-operational.[6] Consequently, in Pasakarnis, we determined that, before asserting the seat belt defense, a defendant must present evidence showing that the seat belts at issue were operational at the time of the accident. After our decision in that case, the district courts began adopting a strict construction of that requirement. See Knapp. See also Barcello v. Rubin, 578 So.2d 58 (Fla. 4th DCA 1991), review denied, 589 So.2d 292 (Fla. 1991); Smith v. Holy Temple Church of God in Christ, Inc., 566 So.2d 864 (Fla. 1st DCA 1990); DeLong v. Wickes Co., 545 So.2d 362 (Fla. 2d DCA 1989); Devolder v. Sandage, 544 So.2d 1046 (Fla. 2d DCA 1989); Booth v. Abbey Road Beef & Booze, Inc., 532 So.2d 1288 (Fla. 4th DCA 1988), review denied, 542 So.2d 1332 (Fla. 1989); Youngentob v. Allstate Ins. Co., 519 So.2d 636 (Fla. 4th DCA 1987). As a result of placing such a strict burden of proof on defendants who wish to assert the seat belt defense, these decisions, for all practical purposes, have eviscerated the defense as articulated in Pasakarnis. We find that the requirements imposed by the district courts as to a seat belt's operational ability are too limiting and that such a strict interpretation is unnecessary for a fair presentation of this defense.[7]
Usually, a vehicle which the plaintiff occupies at the time of an accident is in the custody and control of the plaintiff rather than the defendant. Furthermore, under the applicable statute of limitations, a plaintiff has four years to bring suit against a defendant in this type of case.[8] During that time, a vehicle can be changed, sold, disposed of, or removed from the jurisdiction of the court. Clearly, under the district courts' interpretation of the operational requirement of the seat belt defense, the longer a plaintiff waits to bring an action, the more difficult it is for a defendant to assert that defense. We disagree with this restrictive interpretation. We hold that a defendant has the initial burden to present competent evidence that the plaintiff's vehicle contained seat belts that could have been used. Such evidence is a prima facie showing that the seat belts were operational. A plaintiff can, of course, present contrary evidence to rebut the evidence presented by a defendant. In rendering this decision, we emphasize that we are not receding from the requirements for the seat belt defense we set forth in Pasakarnis; we simply find that competent evidence of existing seat belts in a vehicle, such as that presented in this case, is sufficient to prima facie establish that the seat belts were operational.
In this case, there was sufficient competent evidence to allow Bulldog Leasing to submit the seat belt defense to the jury under Pasakarnis as we interpret that decision. The evidence in this case reflected that: (1) this was an almost new vehicle and *1065 vehicles built at the time were required to have seat belts; (2) Curtis acknowledged that the vehicle had seat belts; (3) the seat belts in this vehicle had been used; and (4) pictures of the vehicle taken immediately after the accident clearly showed seat belts in the vehicle. No evidence was presented by Curtis to show that her seat belt was not operational. We find the evidence in this record was sufficient to establish the prerequisites necessary for the seat belt defense.
In view of our decision on the seat belt defense, the issue as to whether a new trial is required on liability and damages is moot. We do note, however, that the special verdict form used in this case was proper and, with proper instructions, should not have confused the jury.
Accordingly, we quash the decision of the district court and remand this case with directions to reinstate and affirm the judgment of the trial court. We also disapprove the First District Court's decision in Smith; the Second District Court's decisions in DeLong and Devolder; the Third District Court's decision in Knapp; and the Fourth District Court's decisions in Barcello, Booth, and Youngentob to the extent they are in conflict with our decision in this case.
It is so ordered.
McDONALD, SHAW, GRIMES, KOGAN and HARDING, JJ., concur.
BARKETT, C.J., concurs in result only.
NOTES
[1] Bulldog Leasing Co., Inc., and Heavy Machinery & Tool Transporters, Inc., were the owners of the tractor-trailer that was struck by Susan A. Curtis in this case. Suwannee Transport Co., Inc. was leasing the tractor-trailer from the owners at the time of the accident. Crawford Catia was an employee of Suwannee Transport Co., Inc., and was the driver of the tractor-trailer at the time of the accident. For purposes of this review, the petitioners will be referred to collectively as "Bulldog Leasing."
[2] We have jurisdiction under article V, section 3(b)(3), of the Florida Constitution.
[3] The special verdict form read as follows:

1. Was there negligence on the part of the Defendants, Crawford Catia and Suwannee Transfer Company, Inc., which was a legal cause of damage to Plaintiff, Susan Curtis?
X YES ____ NO
If your answer to question 1 is NO, your verdict is for the Defendants, and you should not proceed further except. [sic] Return your verdict to the courtroom. If your answer to question 1 is YES, please answer question 2.
2. Was there negligence on the part of the Plaintiff, Susan Curtis which was a legal cause of the accident?
X YES ____ NO
If your answer to question 2 is YES, please answer question 3. If your answer to question 2 is NO, do not answer question 3 but answer question 4.
3. State the percentage of any negligence, which is a legal cause of the accident that you charge to:
Plaintiff, Susan Curtis 90%
Defendants, Crawford Catia and Suwannee
Transfer Company, Inc. 10%
Total must be 100%
 ____
Your answer to question 3 must total 100%.
Please answer question 4.
4. What is the total amount (100%) of any damages sustained by Plaintiff, Susan Curtis and caused by the incident in question?
Total damages of Susan Curtis $ 275,000.00
In determining the total amount of damages, do not make any reduction because of negligence, if any, of Plaintiff, Susan Curtis. If you have found Plaintiff, Susan Curtis, negligent in any degree, the Court in entering judgment will reduce Plaintiff's total amount of damages (100%) by the percentage of negligence which you found is chargeable to Plaintiff.
5. Did Plaintiff, Susan Curtis, fail to use reasonable care under the circumstances by failing to use an available and fully operational seat belt?
YES X NO ____
If your answer to question 5 is NO, you should not proceed further. Return your verdict to the courtroom. If your answer to question 5 is YES, please answer question 6.
6. Did the Plaintiff, Susan Curtis' failure to use the seat belt produce or contribute substantially to producing any of the Plaintiff, Susan Curtis' damages?
YES X NO ____
If your answer to question 6 is NO, you should not proceed further. Return your verdict to the courtroom. If your answer to question 6 is YES, please answer question 7.
7. What percentage of Plaintiff, Susan Curtis' total damages were caused by her failure to use an available and fully operational seat belt?
67.5%
Do not make any reduction of total damages because of Susan Curtis' failure to wear a seat belt. The Court in entering judgment will make the appropriate reduction.
[4] We note that, in 1986, the legislature enacted the "Florida Safety Belt Law," requiring the use of seat belts by front seat passengers. § 316.614, Fla. Stat. (Supp. 1986). How that enactment affects the seat belt defense is not at issue in this case because the accident here occurred before the enactment of that law. However, that statute does specifically state that a violation of its provisions shall not constitute negligence per se.
[5] The special verdict form read as follows:

(a) Did defendant prove that the plaintiff failed to use reasonable care under the circumstances by failing to use an available and fully operational seat belt?
____ Yes ____ No
If your answer to question (a) is No, you should not proceed further except to date and sign this verdict form and return it to the courtroom. If your answer to question (a) is Yes, please answer question (b).
(b) Did defendant prove that plaintiff's failure to use an available and fully operational seat belt produced or contributed substantially to producing at least a portion of the plaintiff's damages?
____ Yes ____ No
If your answer to question (b) is No, you should not proceed further except to date and sign this verdict form and return it to the courtroom. If your answer to question (b) is Yes, please answer question (c).
(c) What percentage of plaintiff's total damages were caused by his (or her) failure to use an available and fully operational seat belt? ____%
[6] For example, some vehicle owners made their seat belts nonoperational by putting the belts in the connectors totally beneath the seat or by connecting the belts underneath the seat.
[7] Interestingly, in applying the Spier decision from which our rule in Pasakarnis evolved, a New York appellate court took an opposite view from that expressed by Florida district courts as to what is required to assert the seat belt defense. The New York court placed the burden on the plaintiff rather than the defendant by stating that, in the absence of proof that either the seat belt was unavailable or defective, "it should be presumed that all of the seat belts with which a vehicle has been equipped are both operable and available." DiMauro v. Metropolitan Business Auth., 105 A.D.2d 236, 483 N.Y.S.2d 383, 391 (1984).
[8] See § 95.11, Fla. Stat. (1991).