544 So.2d 274 (1989)
Shirley A. McCOY, As Personal Representative of the Estate of Donald McCoy, Deceased; for the Benefit of the Estate of Donald McCoy, Deceased; On Behalf of Suzanne M. McCoy and Michelle J. McCoy, Survivors and Minor Children of the Deceased; and Shirley A. McCoy, Personally and Individually, Appellants,
v.
HOLLYWOOD QUARRIES, INC., and Billy Elwyn Birdwell, Appellees.
No. 87-0397.
District Court of Appeal of Florida, Fourth District.
May 24, 1989.
Rehearing and Rehearing Denied July 7, 1989.
*275 Lekach & Klitzner, P.A., Fort Lauderdale, and Sharon L. Wolfe of Cooper, Wolfe & Bolotin, P.A., Miami, for appellants.
Nancy P. Maxwell of Metzger, Sonneborn & Rutter, P.A., West Palm Beach, for appellee-Hollywood Quarries, Inc.
Rehearing and Rehearing En Banc Denied July 7, 1989.
PER CURIAM.
The appellant, plaintiff below, Shirley McCoy (McCoy), appeals a final judgment entered following a jury trial on her wrongful death and personal injury action. In so doing, she challenges a partial summary judgment in which the trial court found that the appellee, defendant below, Hollywood Quarries, Inc. (Hollywood Quarries), had no contractual or legal duty to provide temporary striping on a road which it was paving and resurfacing. McCoy, as personal representative of the estate of Donald McCoy, also challenges the trial court's denial of her motion for a directed verdict on the seat belt defense raised by Hollywood Quarries. We affirm both the partial summary judgment and the denial of McCoy's motion for a directed verdict.
The instant case arose out of an automobile accident that occurred on Bayview Drive in Fort Lauderdale, Broward County, Florida. Donald and Shirley McCoy, while traveling on their side of the street, were hit head-on by a vehicle driven by Billy Birdwell. Neither of the McCoys was wearing a seat belt at the time. Donald McCoy died as a result of the accident, and his wife, Shirley McCoy, suffered injuries. At the time and location of the accident, Bayview Drive was in the process of being paved and resurfaced by Hollywood Quarries pursuant to a contract with the City of Fort Lauderdale. On the night of the accident, the street was still under construction and was not divided by any temporary center stripe.
Shirley McCoy filed a personal injury suit on her own behalf and a wrongful death action on behalf of the estate of Donald McCoy, the decedent's minor children, and herself as surviving spouse against Hollywood Quarries and others no longer parties to this action, including Di-Mar Paving Company, Inc., Di-Mar Trucking Company, Inc., Broward County, the City of Fort Lauderdale, and Billy Birdwell. McCoy asserted, inter alia, that Hollywood Quarries had a contractual and legal duty to provide temporary striping while paving and resurfacing Bayview Drive, and that Hollywood Quarries breached these duties. *276 McCoy also asserted that Hollywood Quarries was negligent in the manner in which it paved Bayview Drive. The trial court granted a motion for partial summary judgment in favor of Hollywood Quarries finding that it had no contractual or legal duty to stripe the street, and the case proceeded to trial on the theory that Hollywood Quarries negligently paved Bayview Drive. At the close of the evidence, the trial court denied McCoy's motion for a directed verdict on the seat belt defense, and the jury returned a verdict in favor of Hollywood Quarries.
We first address McCoy's argument that the trial court erred in granting a summary judgment finding that Hollywood Quarries, the contractor, had no contractual or legal duty to provide temporary striping while paving and resurfacing Bayview Drive. Since the contract between Hollywood Quarries and the city was silent as to a duty to stripe, we agree with Hollywood Quarries that as a matter of law, it had no contractual duty to provide temporary striping. However, to determine whether Hollywood Quarries had a legal duty to provide temporary striping while paving and resurfacing a street, we are guided by the State of Florida Manual on Traffic Control and Safe Practices (MTCSP) which was incorporated into Rule 14-15.09 of the Florida Administrative Code in 1978. Section 6A-4 of the MTCSP is entitled "Responsibility and Jurisdiction" and provides in pertinent part:
These provisions for public protection are to be applied by: (1) the Florida Department of Transportation; (2) county or municipal forces performing construction or maintenance operations on streets and highways; (3) contractors employed in roadway construction or maintenance under contract to any governmental authority, and (4) all others, including employees and contractors of private and public utility companies who are performing any work within the roadway or are so close as to create hazards for the traveling public or themselves.
Administrative rules are operative and binding on those coming within their terms. Hulmes v. Division of Retirement Department of Administration, 418 So.2d 269 (Fla. 1st DCA 1982), rev. denied, 426 So.2d 26 (Fla. 1983). Since Hollywood Quarries was employed in roadway construction under contract to a governmental authority, Hollywood Quarries comes within the terms of the MTCSP pursuant to section 6A-4(3).
Section 6C-9.1 of the MTCSP provides:
Temporary lane lines on all courses but the final course shall be applied at the end of each day's work and in conformance with Figure 2.18. (emphasis added)
Although this provision mandates that temporary striping shall be provided, neither this provision nor any other provision of the MTCSP specifies who bears this responsibility.
Hollywood Quarries asserts that Broward County, pursuant to a previously existing contract with the City of Fort Lauderdale, has the duty to provide temporary and permanent striping on the streets of Fort Lauderdale. According to Hollywood Quarries, Broward County's previously existing contractual duty cannot be negated by any legal duty the MTCSP might impose because the MTCSP specifically provides that "this Manual does not relieve the contractor or others of any previously existing responsibilities." MTCSP section 6A-4. However, this argument by Hollywood Quarries is untenable under the circumstances of this case because the trial court entered an agreed order expressly finding that Broward County's duty to stripe the streets of Fort Lauderdale is limited to providing only permanent striping after the final course of pavement is laid. Therefore, based on the order which was not appealed or cross-appealed, the law of the case is that Broward County had no contractual duty to provide temporary striping on Bayview Drive while the street was being paved and resurfaced.
Since neither Hollywood Quarries nor Broward County had a contractual duty to provide temporary striping, the remaining question as to who has a duty to stripe is *277 whether the MTCSP imposed a legal duty upon Hollywood Quarries to provide temporary striping while paving and resurfacing Bayview Drive. To support her argument that the MTCSP imposed such a duty upon Hollywood Quarries, McCoy relies upon section 6A-4 of the MTCSP which provides:
On contract work, the responsibility for the installation of adequate safety devices for the protection of the traveling public and workmen, as well as for the safeguard of the work area in general, shall rest with the contractor. (emphasis added).
Although the term "safety device" was left undefined, McCoy asserts that the drafters intended to include temporary striping within the meaning of a "safety device."
Since statutory interpretation is a matter of law to be determined by the trial court, City of St. Petersburg v. Austin, 355 So.2d 486 (Fla. 2d DCA 1978), it was incumbent upon the court below to examine the MTCSP to determine whether the drafters intended to include temporary striping within the meaning of a "safety device." Furthermore, since administrative rules have the force and effect of a statute, Florida Livestock Board v. Gladden, 76 So.2d 291 (Fla. 1954), the rules of statutory interpretation apply with equal force to the provisions of the MTCSP. Although it is well-settled that legislative intent controls the construction of statutes, the courts must determine that intent primarily from the language of a particular statute, Nash v. Fort Lauderdale Board of Adjustment, 462 So.2d 88 (Fla. 4th DCA 1985), and the courts must accept a statute as written. In re Horner's Estate, 188 So.2d 386 (Fla. 3d DCA 1966).
Accepting the provisions of the MTCSP as written, we cannot ascertain whether the drafters intended to include temporary striping within the meaning of a "safety device." We are not unmindful that when reasonably possible and consistent with legislative intent, the courts must give preference to a construction which will give effect to a statutory provision over another construction which would defeat it. Schultz v. State, 361 So.2d 416 (Fla. 1978). However, we are also cognizant of the role of the judiciary and recognize that the courts are not at liberty to speculate as to what was intended by the legislature. Bayou Barber College, Inc. v. Mincey, 193 So.2d 610 (Fla. 1967). In our view, without speculating as to whether this was intended by the drafters, we cannot find that the MTCSP imposes a legal duty upon contractors to provide temporary striping. Therefore, we affirm the trial court's ruling that as a matter of law, the MTCSP, as written, did not impose a legal duty upon Hollywood Quarries to provide temporary striping while paving and resurfacing Bayview Drive.
We next address McCoy's argument that the trial court erred in denying her motion for a directed verdict on the seat belt defense raised by Hollywood Quarries. McCoy relies upon England v. United States, 632 F. Supp. 1340 (M.D.Fla. 1986), to support her contention that the jury should not have been permitted to consider whether the decedent's failure to use a seat belt contributed to his injuries because the seat belt defense is inapplicable in a wrongful death action.
In England, a collision occurred between a postal worker's vehicle and Mr. England's vehicle. The accident was caused entirely by the negligence of the postal employee and resulted in fatal injuries to Mr. England, who was not wearing a seat belt at the time. Id. at 1341. However, had Mr. England been wearing a seat belt he would have suffered some injuries but would not have died as a result of the accident. Id. at 1342.
Mr. England's surviving spouse brought suit against the United States in federal court pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 et seq. However, because the negligent act occurred in Florida, the action was governed by the Florida Wrongful Death Act, section 768.16 et seq., Florida Statutes (Supp. 1982). In deciding whether the seat belt defense was applicable in a wrongful death action, the England court decided the case as it believed it would be decided by a Florida *278 court because the question was one of first impression in this state.
The England court began its analysis of the issue by citing to Insurance Company of North America v. Pasakarnis, 451 So.2d 447 (Fla. 1984), in which our supreme court approved of the seat belt defense against a living plaintiff claiming damages for injuries sustained in an automobile accident. Nevertheless, the England court rejected the application of a seat belt defense against survivors claiming damages in a wrongful death suit by reasoning that:
The seat belt defense, as formulated in Pasakarnis, supra, is clearly and simply a mitigation of damages defense. To allow the seat belt defense to bar all recovery to a survivor would allow otherwise liable defendants to escape liability for all types of injuries caused to a decedent as long as it could be shown that the decedent's death was directly attributable to non-use of a seat belt. Such a result is similar to the anomaly that Florida's Wrongful Death Act was designed to avoid. (emphasis added)
Id. at 1343.
In our view, contrary to the England court's conclusion, applying the seat belt defense in a wrongful death suit does not necessarily act as a complete bar to recovery which permits otherwise liable defendants to "escape" liability. Rather, when the defense is applied against survivors as it would be applied against a living plaintiff, it simply permits the defendant to mitigate damages to the extent that the decedent's injuries were attributable to the non-use of a seat belt. As explained in Pasakarnis:
If there is competent evidence to prove that the failure to use an available and operational seat belt produced or contributed substantially to producing at least a portion of plaintiff's damages, then the jury should be permitted to consider this factor, along with all other facts in evidence, in deciding whether the damages for which defendant may otherwise be liable should be reduced.
Pasakarnis, 451 So.2d at 453. See also The Florida Bar Standard Jury Instructions Civil 85-1, 475 So.2d 682 (Fla. 1985) (approving a jury instruction for failure to use a seat belt). Thus, if the non-use of a seat belt caused some or even all of the injuries, the damages should be reduced accordingly. This application of the defense does not permit a defendant to escape liability, but simply does not require the defendant to compensate the decedent's survivors for injuries which were attributable to the decedent's failure to use a seat belt. To accept McCoy's contention that the seat belt defense is inapplicable in a wrongful death action would create an anomalous situation by imposing liability for injuries which would not have been compensable had the decedent survived.
In the instant case, Hollywood Quarries presented evidence to show that if Donald McCoy had been wearing a seat belt, he would have survived the accident and suffered no injuries. Therefore, the trial court permitted the jury to consider whether McCoy's failure to use a seat belt produced or contributed substantially to his injuries. The jury found that twenty-five percent (25%) of Donald McCoy's total damages were caused by his failure to use a seat belt, and the trial court, in entering final judgment, reduced the damages accordingly.
Based on the evidence adduced at trial, we conclude that the trial court properly permitted the jury to consider the seat belt defense. Accordingly, we find no error in the court's denial of McCoy's motion for a directed verdict, and we affirm the reduction of damages in the final judgment pursuant to the jury's verdict.
AFFIRMED.
GUNTHER, J., concurs.
HERSEY, C.J., concurs specially with opinion.
STONE, J., dissents in part with opinion.
HERSEY, Chief Judge, concurring specially.
Application of the rationale of the dissent would permit different juries to produce *279 conflicting rules as to whether paving contractors are required by administrative rule or statute to provide temporary striping during highway construction. This is, and should be, a matter of law; otherwise an undesirable element of speculation is introduced into the bidding process and inappropriate litigation is encouraged.
STONE, Judge, dissenting in part.
I dissent in part because I believe there was sufficient evidence in the record, including the testimony of an expert, to submit the issue of the contractor's duty (to provide temporary striping during construction) to the jury. Therefore, it was error to enter a summary judgment on this issue. In all other respects, I concur with the opinion.