Ray James **MUNN, Individually, and Ray James Munn, Administrator of the Estate of Elaine Munn, Deceased, on Behalf of the Heirs at Law and Wrongful Death Beneficiaries of Elaine Munn, Deceased, Plaintiff,**

v.

**SOUTHERN HEALTH PLAN, INC., d/b/a IPA Apple Plan, Intervening Plaintiff,**

v.

**Trudy E. ALGEE, Defendant.**

**No. DC87–124–S–O.**

United States District Court, N.D. Mississippi, Delta Division.

Aug. 14, 1989.

Phil Zerilla, Jr., Memphis, Tenn., for plaintiff.

John I. Houseal, Jr., Memphis, Tenn., for intervening plaintiff.

Gary K. Smith, Memphis, Tenn., for defendant.

## OPINION

SENTER, Chief Judge.

This wrongful death case presents some of the most difficult questions which this court has ever been asked to resolve. The case arose from an automobile accident which the defendant admits resulted from her negligence in attempting to pass another vehicle in dense fog. The plaintiff's wife was severely injured as a result of the collision and died approximately two hours after the accident. The problem arises because the plaintiff and his wife, both adherents to the Jehovah's Witness faith, refused on religious grounds to allow the doctors who were treating Mrs. Munn to administer a blood transfusion which the defendant contends would have saved her life.

The defendant seeks summary judgment to the effect that if the jury should find, for whatever reason, that she is not liable for damages for Mrs. Munn's death, then the plaintiff is not entitled to recover for any prospective harm beyond the point of Mrs. Munn's death. Because the answer to this question depends, at least in part, upon the legal doctrine which is to be applied to

the facts of this case, the court will begin by attempting to resolve that issue.

The defendant has raised three theories which she insists apply under the facts of this case to bar, at least in part, the plaintiff's recovery. These are contributory negligence, assumption of the risk, and the doctrine of avoidable consequences. Only the latter of these clearly applies to the facts of this case.

 The doctrine of avoidable consequences, sometimes referred to as the duty of the plaintiff to mitigate damages, "functions as a negative rule, denying an injured person recovery of damages for any reasonably avoidable consequences of the injury." 2 M. Minzer, J. Nates, C. Kimball, D. Axelrod & R. Goldstein, Damages in Tort Actions § 16.00 (1989). The basic rule is that the plaintiff may not recover from the defendant for injuries which flow from the defendant's wrongful conduct but which could have been avoided by the plaintiff's availing herself of reasonable measures to limit the harm. Simply stated, once the injury has occurred, the plaintiff may not stand idly by and allow her damages to accumulate when she could take reasonable steps to minimize them.

> The doctrine of avoidable consequences comes into play only after the defendant has committed the wrongful act, but at a time when the plaintiff still has an opportunity to avoid the consequences in whole or in part.... The doctrine is often referred to as the plaintiff's duty to mitigate damages, but such reference lacks legal precision and can lead to confusion with other concepts in the law of damages. The doctrine of avoidable consequences should not be confused with the doctrine of contributory negligence. The latter focuses on issues of proximate causation of, and ultimate liability for, an accident, whereas the former focuses only on measurement of damages resulting from the injury-producing event.

*Id.*

The distinction noted above makes it clear that the present case is not one where the doctrine of contributory negligence should be applied. There has been no alle-gation that any action or inaction of Mrs. Munn was causally related to the accident which resulted in her injuries. The decision not to accept a blood transfusion was made after the defendant's wrongful conduct had already resulted in severe injury to Mrs. Munn. However, that decision may have resulted in an avoidable aggravation of the injury. This distinction between the doctrines of avoidable consequences and contributory negligence based on when the allegedly unreasonable conduct of the plaintiff occurred is widely recognized.

> Generally, the consequences of contributory negligence and avoidable consequences occur—if at all—at different times. Contributory negligence occurs either before or at the time of the wrongful act or omission of the defendant. On the other hand, the avoidable consequences generally arise after the wrongful act of the defendant.

22 Am.Jur.2d § 497 (Revised ed. 1988). The distinction has been noted by the Mississippi Supreme Court. *See Yazoo & M.V.R. Co. v. Fields*, 188 Miss. 725, 195 So. 489, 490 (1940).

The other theory raised by the defendant is that by refusing the transfusion, Mrs. Munn assumed the risk of her own death. The doctrine of assumption of the risk provides that a plaintiff who voluntarily assumes a risk of harm arising from the negligent or reckless conduct of the defendant cannot recover for such harm. Restatement (Second) of Torts § 496A. At first glance, this doctrine appears to be applicable to the facts of this case. However, a closer study of the doctrine suggests that it may not be applicable. As stated by the Mississippi Supreme Court,

> Broadly speaking: "... [A]ssumption of the risk means that the plaintiff, in advance, has given his consent to relieve the defendant of an obligation of conduct toward him, and to take his chances of injury from a known *risk arising from what the defendant is to do or leave undone.*"

*Shurley v. Hoskins*, 271 So.2d 439, 443 (Miss.1973) (quoting Prosser, Handbook of

the Law of Torts, § 68 p. 440 (4th ed. 1971)). (Emphasis added.)

As this passage makes clear, the risk that is being assumed is the known risk that the defendant does not intend to act, or has already failed to act, in accordance with a duty imposed on him by law. "The result is that the defendant is relieved of all legal duty to the plaintiff; and being under no duty, he cannot be charged with negligence." Prosser, § 440. In the instant case, by assuming the risk that she would die if she did not agree to a blood transfusion, Mrs. Munn did not relieve the defendant of any duty because the defendant had no duty in relation to the transfusion.

Both parties have directed the court's attention to *Shorter v. Drury*, 103 Wash.2d 645, 695 P.2d 116 (1985). In that case, the plaintiff's wife had entered the hospital for Dr. Drury to perform a dilation and curettage procedure. Prior to the surgery, the Shorters discussed the procedure chosen with Dr. Drury, who explained that there could be complications including the loss of blood. The Shorters then told Dr. Drury that they were Jehovah's Witnesses and that their religious beliefs would not permit Mrs. Shorter to accept a blood transfusion. For this reason, Dr. Drury had the Shorters sign a document expressly refusing to permit him to administer a blood transfusion and releasing him from any liability for failing to give her a transfusion should the need arise. During the performance of the D & C, Dr. Drury severely perforated Mrs. Shorter's uterus causing serious blood loss. Other surgeons then took over. They informed both of the Shorters that Mrs. Shorter would almost surely die if she continued to refuse to allow a transfusion. The Shorters remained steadfast in their refusal, and Mrs. Shorter bled to death. Mr. Shorter then filed a wrongful death action against Dr. Drury. Following trial, the jury found Dr. Drury liable for malpractice, but reduced the damages by 75 percent due to the fact that the Shorters had voluntarily assumed the risk of Mrs. Shorter's bleeding to death.[1]

Although the court applied the doctrine of assumption of the risk in *Shorter*, that case is clearly distinguishable from the case at bar. In *Shorter*, the defendant was the doctor who performed the surgical procedure. Dr. Drury owed Mrs. Shorter a duty to use the knowledge, skills, and abilities of an average physician in performing the D & C. This duty would have included the obligation to administer a blood transfusion to keep his patient from bleeding to death if the need arose. When the Shorters signed the refusal form, they expressly assumed the risk of any harm which might result from Dr. Drury's failure to fulfill this duty and thereby relieved the doctor of that duty. In the present case, although it may be said that the Munns assumed the risk of any harm which might result from the refusal of the transfusion, that refusal enured to the benefit of the doctors performing the surgery who had a duty in relation to the transfusion, not to the benefit of Ms. Algee who had no duty in regard to the transfusion from which she could be released.

In an earlier motion for summary judgment, the plaintiff raised two issues in relation to the defense based on the doctrine of avoidable consequences which were not addressed by the court in its order denying the motion. Those issues need to be addressed prior to trial and both are relevant to the issue currently before the court. First, the plaintiff contends that the eggshell or thin skull rule should be applied in this case. The "rule" is actually an exception to the more general rule that a defendant is liable only for those consequences which were the reasonably foreseeable re-

---

1. Apparently, following the adoption of the comparative negligence standard in Washington, the courts of that state started applying a formula for reducing damages based on comparative fault in assumption of the risk cases as well. Mississippi has not done so. *See Saxton v. Rose*, 201 Miss. 814, 29 So.2d 646 (1947) (recognizing assumption of the risk as a complete defense although Mississippi was at that time a pure comparative negligence state). (Cf. *Braswell v. Economy Supply Co.*, 281 So.2d 669 (Miss.1973) (holding that where assumption of risk and contributory negligence doctrines overlap, contributory negligence instruction should be given.))

sults of an anticipated action. As stated by Prosser, a "defendant is held liable when his negligence operates upon a concealed *physical* condition, such as pregnancy, or a latent disease, or susceptibility to disease, to produce consequences which he could not reasonably anticipate." Prosser, Handbook of the Law of Torts § 43, p. 261 (4th ed. 1971) (emphasis added). The statement of the rule in the Restatement is much the same:

> The negligent actor is subject to liability for harm to another although a *physical condition* of the other which is neither known nor should be known to the actor makes the injury greater than that which the actor as a reasonable man should have foreseen as a probable result of his conduct.

Restatement (2d) Torts § 461. (Emphasis added.) *See also* 22 Am.Jur.2d § 281 (1988) (defendant liable "even if a particular injury may have been aggravated by ... the peculiar physical condition of the injured person.").

■ Every authority which this court can find which states the "eggshell skull rule" speaks only of physical conditions which pre-exist the injury for which compensation is sought and lead to unforeseeably severe results. The religious beliefs of the plaintiff simply are not covered by this rule.

■ The plaintiff also presses a first amendment argument. This argument is not fleshed out and relies entirely on cases where a state attempted to force a Jehovah's Witness to accept a blood transfusion. There is a clear distinction, however, between the overt attempt by a state actor to force an individual to take some action which her religion forbids her to take and the application of a universally applied tort doctrine which leaves the person "free to make [her] choice between the practice of [her] religion and the acceptance of treatment that may be contrary thereto." *Martin v. Industrial Accident Commission,* 147 Cal.App.2d 137, 304 P.2d 828, 831 (1956) (upholding denial of worker's comp. death benefits where death was found to be result of refusal of transfusion on reli-

gious grounds). An individual has a right under the first amendment to hold religious beliefs and live by them, but that does not mean that anyone who commits a tort against that individual must suffer the consequences of decisions made by the victim based upon those religious beliefs.

It has been argued that persons who refuse medical treatment on religious grounds should be exempted on first amendment grounds from the operation of the doctrine of avoidable consequences. Comment, *Medical Care, Freedom of Religion, and Mitigation of Damages,* 87 Yale L.J. 1466 (1978). The author contends that the application of this facially neutral doctrine to a tort victim who refuses medical treatment for religious reasons is a denial of a state benefit on religious grounds. The argument is basically that putting the tort victim to the choice of acting in violation of his religious beliefs or losing the right conferred by state law to obtain complete recovery for all harm which results from the wrongful conduct of another places an undue burden on the victim's free exercise rights. Cited in support of this argument are *Sherbert v. Verner,* 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963), and *Wisconsin v. Yoder,* 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972). *Sherbert* involved the denial of state unemployment benefits to a woman who refused on religious grounds to accept a job which required her to work on Saturday. The Court held that this was an impermissible burden on her free exercise rights. In *Yoder,* the Court held that a state mandatory school attendance law violated the free exercise rights of people of the Amish faith. Each of these cases involves direct state action. If an exception to the doctrine of avoidable consequences is made for those who refuse medical treatment on religious grounds, payment for the harm which could have been avoided will come from the pockets of the tortfeasor, not from the coffers of the state. To adopt an absolute rule which required one citizen to pay damages for the consequences of another's exercising her religious freedom would favor an establishment of religion in a way which seems constitutionally unsup-

portable. Additionally, the doctrine of avoidable consequences does not automatically bar the plaintiff from recovering the losses sustained after the refusal of medical treatment; it bars recovery of those losses only when the refusal is found to be unreasonable under all of the circumstances known to the tort victim at the time of the refusal. In what has come to be considered as the leading case on this point, the Connecticutt Supreme Court upheld the lower court's decision to submit the question of the objective reasonableness of the plaintiff's refusal of medical treatment to the jury with the instruction that the jurors were to consider the fact that the refusal was based on religious belief as one of the circumstances. *Lange v. Hoyt*, 114 Conn. 590, 159 A. 575 (1932). *See also Christiansen v. Hollings*, 44 Cal.App.2d 332, 112 P.2d 723 (1941). The author of the comment also takes exception to this procedure, arguing that the jury is, in effect, being asked to pass upon the reasonableness of the plaintiff's religious belief. This indeed presents a problem. However, neither of the parties have adequately addressed this issue, so the court will delay any attempt to resolve it until the parties may be heard at the jury instruction conference after the evidence is in.

■ The court holds that the doctrine of avoidable consequences is the appropriate standard to be applied in this case and that its application does not violate the first amendment.

### Application of the Doctrine of Avoidable Consequences in a Wrongful Death Case

As stated earlier, the doctrine of avoidable consequences prevents the plaintiff from recovering for that part of her injury which could have been avoided by taking reasonable steps after the injury occurred.[2] How does this rule operate when the harm which the defendant contends was avoidable is death?

Neither party has presented the court with a single authority on this point, nor has exhaustive research turned up a single case where any court has addressed the issues presented by this case. Simply stated, the question is: if the jury should find that the refusal of the blood transfusion was unreasonable and that Mrs. Munn would have lived had she taken the transfusion, then what damages may the plaintiff recover.

■ The defendant's argument is that if the jury makes this dual finding, then there is no wrongful death and the plaintiff's cause of action is under the survival statute. From a purely technical standpoint, this is a compelling argument. At common law, "if a tortfeasor killed a man, neither the victim's losses before his death nor the losses to his survivors caused by his death were compensable." Dobbs, Handbook on the Law of Remedies, § 8.2, p. 552 (1973). Because the statutes which have been passed to abrogate this rule are in derogation of the common law, they must be strictly construed. *Durham v. Durham*, 227 Miss. 76, 85 So.2d 807, 809 (1956). If recovery is not expressly provided for in either the wrongful death or survival statute, then there can be no recovery for the losses suffered by either the survivors or the estate. Given this backdrop, if Mrs. Dunn's refusal to accept the transfusion is seen as cutting off the defendant's liability for her death, then the plaintiff must fall back on the Mississippi Survival Statute, Miss.Code Ann. § 91–7–233 (1972). *See Berryhill v. Nichols*, 171 Miss. 769, 158 So. 470 (1935) (where death was not proximately caused by wrongful act of defendant, any recovery for decedent's pain and suffering between commission of tort and death must be had, if at all, under survival statute).

Section 91–7–233 provides:

Executors, administrators, and temporary administrators may commence and prosecute any personal action whatever,

---

**2.** Several courts have expanded the doctrine to include measures which if taken prior to the injury would have lessened the severity of the injury. The most common example is the application of the doctrine in cases where the injury resulting from an auto accident was aggravated by the plaintiff's failure to use a seat belt.

at law or in equity, which the testator or intestate might have commenced and prosecuted.

Mrs. Munn could clearly have commenced an action against Ms. Algee to recover for the injuries she sustained as a result of Ms. Algee's wrongful conduct. Included in her recovery, if any, would have been prospective relief for the future effects of the injuries which were received in the accident, such as lost income, future pain and suffering, and future medical expenses. However, in the usual survival action, the calculation of these damages is based, not upon a mortality table, but upon the actual date of the tort victim's death. In survival actions, "damages must of course be based upon the known period of life, and no recovery may be had for any prospective loss of earnings, expenses, or suffering based upon any probable life expectancy of the deceased, such as would be appropriate if the deceased were prosecuting the case in his lifetime." McCormick, *Damages*, 337–38 (1935). This rule clearly applies where the death results from an intervening cause which is deemed sufficient to break the causal connection between the tort and the death; but it is not so clear that it applies in this case.

In the usual personal injury case, in addition to the action under the survival statute, the plaintiff, as the husband of the decedent, would have a claim for his own losses which were caused by the injury to his wife—i.e., loss of services, loss of consortium, etc. This claim could be brought "at common law without the aid of statute." *Berryhill*, 158 So. at 471 (*citing Natchez, Jackson and Columbus Railroad Co. v. Cook*, 63 Miss. 38 (1885)). However, once again, recovery could be had only for the losses incurred by the plaintiff during the time period between the commission of the tort and the death of Mrs. Munn, if the damages resulting from the death are not attributable to the defendant.

The plaintiff counters with the argument that a straightforward application of the doctrine of avoidable consequences would allow him, both on his own behalf and on behalf of the decedent's estate, to recover damages for any harm which could not have been avoided by allowing the transfusion. A perfunctory reading of the rule, as generally stated, supports this argument. Generally, it is said that the plaintiff may recover for the harm which resulted from the defendant's wrongful act and which could not have been avoided by the plaintiff's acting reasonably after the injury has occurred. The plaintiff alleges that his wife suffered severe physical injury, including a broken pelvis, broken ribs, a punctured and collapsed lung, and a severed artery, which would have resulted in long term disability, pain and suffering, and future medical expenses if she had survived. These consequences could not have been avoided by allowing the transfusion and, therefore, should be recoverable. On a purely emotional level, this argument is appealing; however, any attempt to ground such a holding on legal principles is thwarted by the stark reality that these consequences were never actually suffered by the plaintiff's decedent. This court can find no authority for allowing recovery of purely hypothetical losses.

The argument for recovery of damages for injuries to Mr. Munn which were actually suffered as a result of the death, at least to the extent that they would have occurred even if the plaintiff had taken the transfusion and survived, does not share this infirmity. Clearly, given the extent of the decedent's injuries, if she had lived, there would have been some loss of consortium and services to her husband and quite possibly lost earnings which under this argument ought now to be recoverable by her estate. There are serious problems with allowing recovery of damages for these elements of the loss. Whether the problem is addressed in terms of proximate cause [3] or simply in terms of a public policy

---

**3.** There has been great debate among the commentators on the question whether the plaintiff's failure to take reasonable steps to avoid the consequences of an injury acts as an intervening cause so that the defendant's original act of negligence may no longer be viewed as the proximate cause of the avoidable injury, even though it is clearly an actual, contributing cause. The earlier authorities stated as a rule that "[w]here a plaintiff could have avoided the

against allowing recovery from this defendant for consequences which the plaintiff could have avoided matters little. The doctrine of avoidable consequences operates to relieve the defendant of any legal obligation to pay damages for harm which the victim of her wrongful act could have avoided. The damages which the plaintiff seeks to recover did not occur as a result of the personal injuries suffered by the decedent but as a result of Mrs. Munn's death—a death for which the defendant has no legal obligation to pay damages if the jury should find that the death was avoidable and that the refusal of the transfusion was unreasonable.

## CONCLUSION

■ The court holds that the doctrine of avoidable consequences is the appropriate standard to be applied in this case and that its application does not violate the plaintiff's first amendment rights. The court further holds that this question should be submitted to the jury through an appropriate instruction telling the jurors that they may consider the fact that it was based on religious belief. The court also holds that the plaintiff may not recover for purely hypothetical injuries which never occurred because of her death if the jury should find that the refusal of the transfusion was unreasonable and that the decedent would have survived had she taken the transfusion; nor may he recover for the harm actually suffered which resulted from his wife's death even though it would have been suffered to some extent even if she had taken the transfusion and lived.

### ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

This matter is before the court for consideration of the defendant's motion for partial summary judgment. In this motion, the defendant asks the court to rule that in the event the jury should find that the plaintiff's decedent acted unreasonably in refusing a blood transfusion and that her death would have been avoided if she had accepted the transfusion, then the plaintiff is not entitled to recover damages for any loss which would have occurred had the decedent accepted the transfusion and lived. For reasons fully set forth in an accompanying opinion, the court finds that the motion is well taken.

Therefore, IT IS ORDERED:

That the defendant's motion for partial summary judgment is granted.

---

injurious consequences of defendant's wrong, his negligence in failing to do so is regarded as the proximate cause of the damages, and the original fault is remote." Cooley, Hale on Damages, p. 91 (2d ed.1912); *see also* 1 Sedgwick, Elements of the Law of Damages, p. 73 (1912). This reasoning has been seriously criticized in more recent times and was flatly rejected by the drafters of the Second Restatement of Torts. Restatement (2d) of the Law of Torts, § 918 Comment (a) (in cases covered by § 918 on avoidable consequences, "it is not true ... that the conduct of the tortfeasor ceases to be a legal cause of the ultimate harm."). The more recent authorities ground the rule in a public policy that a plaintiff "should not be permitted to inflict injury on another person, even a tortfeasor, by making him pay for the consequences of" the plaintiff's decision. Stein: Damages and Recovery: Personal Injury and Death Actions, § 126 (1972). *See also* McCormick, Handbook on the Law of Damages § 33 (1935).