Ray James MUNN, Individually, and Ray James Munn, Administrator of the Estate of Elaine Munn, Deceased, on Behalf of the Heirs and Wrongful Death Beneficiaries of Elaine Munn, Deceased, Plaintiff,

Southern Health Plan, Inc., d/b/a IPA Apple Plan, Intervening Plaintiff,

v.

Trudy E. ALGEE, Defendant.

No. DC87–124–S–O.

United States District Court,
N.D. Mississippi,
Delta Division.

Feb. 8, 1990.

Phil Zerilla, Jr., Memphis, Tenn., for plaintiff.

John I. Houseal, Jr., Memphis, Tenn., for intervening plaintiff.

Gary K. Smith, Memphis, Tenn., for defendant.

## OPINION

SENTER, Chief Judge.

This action was brought to recover for the wrongful death of the plaintiff's wife as well as the plaintiff's own personal injuries. The matter was tried to a jury which returned a verdict for the plaintiff in the amount of $20,411.67 as compensation for the medical bills incurred by his wife and for the suffering she endured prior to her death. The jury further found that the death of plaintiff's decedent was 100 percent attributable to her refusal of a blood transfusion and therefore awarded no damages for wrongful death. The jury also awarded the plaintiff $241.44 for medical expenses incurred in the treatment of his own personal injuries, but awarded nothing for pain and suffering. The case is now before the court for consideration of the plaintiff's motion for a new trial. The plaintiff raises ten separate grounds in support of his motion for new trial.[1]

### Factual Background

The basic facts of this case were never disputed by the parties. The plaintiff's decedent was seriously injured when the car in which she was riding was struck by a vehicle driven by the defendant. The cause of the accident was the defendant's negligent attempt to pass a tractor-trailer rig in very dense fog. The plaintiff was also injured in the accident. The plaintiff's decedent was taken to the emergency room at a regional trauma center where she died during surgery after refusing to accept a blood transfusion. One of the reasons for

---

1. The plaintiff enumerates eleven grounds. For purposes of this opinion, the first two will be discussed together.

refusing blood transfusions was the Jehovah's Witness religion beliefs of plaintiff and his wife. The only questions which necessitated trial were whether death was avoidable, whether the refusal of blood was unreasonable, and the amount of damages.

Analysis of Plaintiff's Points of Error

An earlier opinion which addressed many of the legal problems presented by this most unusual case was published *sub nom. Munn v. Southern Health Plan*, 719 F.Supp. 525 (N.D.Miss.1989). However, following entry of that opinion, the court reconsidered certain portions of it and altered its holding as to recovery of damages in a case where the doctrine of avoidable consequences applied and the arguably avoidable consequence was death. One of the points of error raised by the plaintiff concerns the instructions which the court gave to the jury on what damages were recoverable. The court will address this argument first because it presents the best opportunity to set forth the substance of the court's amendment of the earlier opinion.

■ The plaintiff contends that the court erred by not instructing the jury that the plaintiff could recover for losses which his wife would have sustained had she taken the transfusion and lived. In its earlier opinion, this court had ruled that such damages were not recoverable if the jury found that Mrs. Munn could have avoided her death by accepting the transfusion and that the refusal to accept the transfusion was unreasonable under the circumstances. The reasoning was that if the death was an avoidable consequence of the defendant's negligence, then the defendant was not liable to pay damages under the wrongful death statute and recovery under the survival statute was limited to those damages which accrued prior to the death of the decedent. *Id.* at 530–32.

As the day of trial approached, the court became increasingly concerned that this approach was unfair. There can be little doubt that in cases such as this, the original act of negligence continues to operate as a cause in fact of the death of the decedent. Of course, cause in fact is not synonymous with legal or proximate cause. In the earlier published opinion, the court noted that the doctrine of avoidable consequences which was to be applied in this case "focuses only on the measurement of damages" and is not concerned with questions of proximate cause. *Id.* at 527. However, the court later declined to decide whether the "failure to take reasonable steps to avoid the consequences of an injury acts as an intervening cause so that the defendant's original act of negligence may no longer be viewed as the proximate cause of the avoidable injury, even though it is clearly an actual, contributing cause." *Id.* at 531 n. 3. There is a split of authority among the commentators on this point. At first blush, this appears to be an argument that only an academician could love. There seems to be no practical difference between the assertion that the plaintiff's avoidable injuries were not proximately caused by the defendant's negligence and the statement that the plaintiff cannot recover from the defendant for any losses which the plaintiff could reasonably have avoided, even though the losses were proximately caused by the defendant's negligence. Either way you view the problem, the plaintiff's right to recover, and therefore the defendant's liability, is limited to those damages which may be attributed to injuries which were not avoidable. However, in this case the distinction could make a difference.

The Mississippi Supreme Court recognizes that there may be more than one proximate cause of an injury. *Monroe County Electric Power Ass'n v. Pace*, 461 So.2d 739, 746 (Miss.1984). A defendant's negligence need only proximately contribute to the injury in order for the defendant to be held liable. The same rule applies in wrongful death cases. *Berryhill v. Nichols*, 171 Miss. 769, 158 So. 470 (1935) (negligence complained of must be at least directly contributing cause of death). Thus, if the unreasonable failure to accept medical treatment which leads to an avoidable

death is not viewed as a superseding[2] cause of the death, the original act of negligence is a proximate cause of the death and some amount of damages should be recoverable under the wrongful death statute.

Whether proof of an avoidable consequences defense goes to the question of legal causation or merely to the question of what damages are recoverable is an issue which the Mississippi Supreme Court has never addressed. However, that court has defined the concept of superseding cause.

> [W]here an act of negligence is a substantial factor in bringing about an injury, it does not cease to be a legal and proximate cause thereof because of the intervention of a subsequent act of negligence of another which contributed to the injury, if the prior act of negligence is still operating, and the injury inflicted is not different in kind from that which would have resulted from the prior act.

*Solomon v. Continental Baking Co.*, 172 Miss. 388, 160 So. 732, 733 (1935). Under this definition, it is clear that the injured party's unreasonable conduct in an avoidable consequence case is not a superseding cause of the ultimate injury. There can be no doubt that the defendant's prior act of negligence is still operating in such a case. In fact, the defendant's argument in a case such as this is that although the additional injury occurred as a natural consequence of her negligent act, she should not be required to pay damages for that injury which the plaintiff could have avoided.

**2.** Throughout the course of this opinion, the court uses the phrase "superseding cause" as a shorthand form of the phrase "intervening cause sufficient to break the chain of causation which runs from the original act of negligence to the injury". The older Mississippi cases refer to this concept as an "efficient intervening cause".

**3.** On occasion, the Mississippi Supreme Court has applied a "but for" analysis to determine whether an intervening act of negligence superseded the original act of negligence. In *Holmes v. T.M. Strider & Co.*, 186 Miss. 380, 189 So. 518 (1939), the court held that where the intervening act of negligence by itself would not have caused the plaintiff's injury, but did so only when combined with the effects of the original

It might be argued in this case that death is an injury different in kind from the physical injury which would have resulted from the defendant's negligent act. However, the focus should be on whether the harm which did result was of a different kind from that which was likely to result from the defendant's conduct. *See Restatement (Second) of Torts*, § 451(b) (1965). The death of persons in cars traveling in the opposite direction was one of the likely consequences of the defendant's attempt to pass in dense fog which made that attempt an act of negligence.[3] Perhaps more important in this determination is the fact that the notion of superseding cause applies only when the intervening act or event is the act of a third person or a natural force. *Restatement (Second) of Torts*, §§ 440 et seq. (1965); *Brewer v. Town of Lucedale*, 189 Miss. 374, 198 So. 42 (1940). Other principles, such as contributory negligence, assumption of the risk, and the doctrine of avoidable consequences, apply when the intervening act is an act of the tort victim.

Following the logic of the above reasoning, the court refused to give a superseding cause instruction to the jury. In further reliance on its conclusion that the principle of superseding cause did not apply in this case, the court instructed the jury that even if it found that Mrs. Munn's death was avoidable and that her refusal of the blood transfusion was unreasonable, it could still award the plaintiff wrongful death damages, if it further found that the defendant's negligence was a contributing cause of Mrs. Munn's death.[4]

act of negligence, the second act was not a superseding cause of the plaintiff's injury. Under this analysis, it is abundantly clear that the refusal to accept the blood transfusion would not be considered a superseding cause of Mrs. Munn's death.

**4.** Some mention should be made of one other possible disposition of the question of the application of the avoidable consequences defense in a wrongful death case. Because the doctrine holds that a defendant should not be required to pay damages which could have been avoided by the plaintiff, some courts have held that if the damages which would have been incurred if the plaintiff followed the course of action which the defendant contends was reasonable are greater

Once the initial hurdle of determining that the plaintiff may sue under the wrongful death statute is cleared, the difficult task of determining what damages are recoverable must be resolved. In its initial opinion, the court rejected the plaintiff's argument that he should be allowed to recover for those injuries which Mrs. Munn would have suffered even if she had taken the transfusion and lived. The court's refusal to so instruct the jury is now assigned as error. The court is still of the opinion that the allowance of such damages would be improper. Several of the elements of damage sought by the plaintiff were never actually suffered by the deceased. These include the pain and suffering which the plaintiff would have experienced had she survived and the medical bills which she would have incurred. Other elements could have been supported only by highly speculative testimony. For these reasons, the court decided that the more equitable approach was that taken by the Florida Court of Appeals in *McCoy v. Hollywood Quarries, Inc.*, 544 So.2d 274 (Fla. Dist.Ct.App.1989). A full explication of that court's holding requires some regression.

In an earlier case, the Florida Supreme Court had adopted the seat belt defense, allowing the defendant in an automobile accident case to raise as a defense the plaintiff's failure to use a seat belt. *Insurance Co. of North America v. Pasakarnis*, 451 So.2d 447 (Fla.1984). The seat belt defense has been the subject of great debate in the various state courts. Some courts have rejected the defense outright. Those which have allowed it have split on the question of the proper theory under which it should be allowed. Some courts have treated it as a type of contributory negligence, while others have allowed the

defense as a variation on the doctrine of avoidable consequences. The defense fits neatly under neither theory. The Florida Supreme Court rejected the contributory negligence approach, holding that the jury should not be allowed to consider the nonuse of a seat belt on the issue of liability, unless there was proof that the failure to buckle up was a proximate cause of the accident. *Id.* at 453–54. Instead, the court applied a modified form of the doctrine of avoidable consequences, allowing the jury to apportion damages if it found that the plaintiff had unreasonably failed to use an available seat belt and that this failure had resulted in enhanced injury to the plaintiff. *Id.*

Two years later, the United States District Court for the Middle District of Florida was called upon to apply the *Pasakarnis* rule in a case where the arguably avoidable consequence of nonuse of a seat belt was death. *England v. United States*, 632 F.Supp. 1340 (M.D.Fla.1986). As this court noted in its earlier opinion, there was no cause of action for wrongful death at common law. *Munn*, 719 F.Supp. at 530. Wrongful death statutes were adopted by many states for the purpose of avoiding the inequity which existed when the state of the law was such that a tortfeasor could be held liable for injury short of death which was proximately caused by his negligence, but walked away without liability if his victim died. The district court held in *England* that this purpose would be defeated if the seat belt defense were allowed in a case where the defendant contended that death would have been avoided if the deceased had used his seat belt. *England*, 632 F.Supp. at 1342–43. For this reason, the court refused to allow the defense in a wrongful death case. *Id.*

than the damages which were actually incurred because of the plaintiff's failure to follow the recommended course, then the doctrine would not apply at all. In a wrongful death case, if the defendant failed to prove that wrongful death damages were greater than the damages which would have been incurred by the tort victim had she accepted the proposed medical treatment and lived, then the defendant would have failed to prove the applicability of the defense. In

that case, the matter would proceed as a straightforward wrongful death case. On the other hand, if the defendant established the applicability of the defense, the court would have exactly the same problem which this court faced. This idea was rejected by this court because of the tremendous problems of proof involved and because it would lead to the application of the defense in some wrongful death cases, but not in others.

Finally, we return to the point of beginning—the *Hollywood Quarries* decision. In that case, the Florida Court of Appeals rejected the result reached in *England,* noting that under *Pasakarnis* the seat belt defense would not necessarily be an absolute bar to recovery in a wrongful death case. The court went on to hold that the defense would operate in a wrongful death case exactly the same way it was applied to the personal injury action in *Pasakarnis.* Thus the jury was instructed that if it found that plaintiff's decedent could have avoided death by using an available seat belt and that the failure to use the belt was unreasonable under the circumstances, then the jury was to determine that portion of the plaintiff's wrongful death damages which were to be attributed to the nonuse of the seat belt. The plaintiff's damages were then reduced by that percentage.

These cases provide an apt analogy to the facts of this case. When the arguably avoidable consequence is death, it is patently unfair to limit the tort victim's recovery to compensation for those injuries actually incurred prior to the avoidable death. At the same time, it is equally unfair to require the defendant to pay the full panoply of wrongful death damages, since, although the death was proximately caused by the defendant's wrongful act, at least a portion of the resulting damages is attributable to the refusal of appropriate medical care. The solution to this problem set forth in *Hollywood Quarries* is a reasonable one.

In a case where federal jurisdiction is based on diversity of citizenship, the district court sits as a state trial court. *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). In a case where there is no official pronouncement of state law on an issue which the district court must decide in order to conclude the case,

the district court must make an *Erie* guess as to how the courts of that state would rule on the issue. *Jackson v. Johns-Manville Sales Corp.,* 781 F.2d 394, 397 (5th Cir.1986). Although this court should be more reluctant to extend Mississippi law than a state trial court would be, when an issue is squarely presented, the court cannot refuse to address it. In reaching the conclusion that it has reached in this case, the court considered the fact that Mississippi is a pure comparative negligence state.[5] *See* Miss.Code Ann. § 11-7-15 (1972). Mississippi courts and juries are quite comfortable with apportionment of damages in cases involving negligence by the plaintiff. Mississippi's preference for the pure variety of comparative negligence certainly is evidence of this state's desire that tort victims be fully compensated for any injury that resulted from the tortfeasor's negligent act. In fashioning the scheme employed in this case, the court attempted to act in keeping with that desire. Thus, the jury was instructed in the instant case that it was to determine the percentage of the plaintiff's damages which were attributable to the decedent's refusal of a blood transfusion. The plaintiff's motion for new trial on the ground that the court should have instructed the jury that the plaintiff could recover for all injuries which his wife would have sustained had she taken the transfusion and lived will be denied.

█ The plaintiff also contends that a new trial should be ordered because the jury's award was inadequate.[6] In order for this court to grant a new trial on that ground, the court must find that the award was so " 'inadequate as to shock the judicial conscience and to raise an irresistible inference that passion, prejudice, corruption or other improper cause invaded the trial.' " *Taylor v. Green,* 868 F.2d 162, 164 (5th Cir.1989). The plaintiff's contention

---

5. As this court is using the term, a pure comparative negligence statute is one that allows the finder of fact to apportion damages or liability regardless of the percentage of fault assigned to the plaintiff. Under Mississippi's statute, if the plaintiff were found to be 99 percent at fault, he could recover from the defendant 1 percent of his damages.

6. Because the contention that the inadequacy of the award mandates a new trial requires the court to consider whether prejudice played a part in the jury's decision, this point will be considered in conjunction with the plaintiff's argument that the jury was prejudiced against him.

that the jury award was grossly inadequate is based on the fact that the jury awarded him nothing for his personal pain and suffering. However, the court finds that the plaintiff's testimony on this point was less than compelling. Although the plaintiff testified that he had some pain for about three months after the accident, his injuries were not so bad that it would have been unreasonable for the jurors to conclude, as they apparently did, that the pain experienced by the plaintiff was so minor that it did not justify a damage award. The court cannot say that the jury's refusal to award damages for his pain and suffering raises an irresistible inference that some improper cause invaded the trial.

 The next ground for new trial raised by the plaintiff is that the answers given to the two subparts of special interrogatory number 4 were inconsistent. This case was submitted to the jury on special interrogatories. Interrogatory 4 asked:

Do you find that the original injuries sustained by Elaine Munn combined with her unreasonable refusal of blood to cause her death? If your answer to this interrogatory is "Yes," what percentage did Elaine Munn's unreasonable refusal of blood contribute to her death?

The jury answered "yes" to the first subpart and 100 percent to the second. The plaintiff argues that these two answers are inconsistent and that this inconsistency shows that the jurors were either confused or acted out of prejudice. "If answers to jury interrogatories are in *irreconcilable conflict*, then the judge has no authority to enter judgment based upon those answers." *Brunner v. Maritime Overseas Corp.*, 779 F.2d 296, 297 (5th Cir.1986) (emphasis added). When faced with an apparent inconsistency in answers on motion for new trial made after the jury has been discharged, the court is "required under the Seventh Amendment to make a concerted effort to reconcile apparent inconsistencies in answers to special verdicts if at all possible." [7] *Alverez v. J. Ray McDermott*

*& Co., Inc.*, 674 F.2d 1037, 1040 (5th Cir. 1982). In order to determine whether the answers to the two subparts of the interrogatory are in irreconcilable conflict, those answers must be viewed in light of the instructions given to the jury. The instruction which related to Interrogatory 4 told the jurors

If you find that Elaine Munn would have lived had she accepted blood transfusions and that she unreasonably refused these transfusions under the circumstances, you still may award plaintiffs damages under the wrongful death statute if you find that the original injuries sustained by Elaine Munn combined with her unreasonable refusal of blood to cause her death. In that event, you must determine the percentage of wrongful death damages attributable to Elaine Munn's refusal to accept the transfusions. You have the discretion to place this percentage at 0%, 100%, or any percentage in between.

Under the instruction as given, the jurors were told that they could do exactly what they did. The instruction informs the jurors that if they found that the original injury was still an active causal agent at the time of Elaine Munn's death, then they were to apportion wrongful death damages, not liability. The court must assume that the jurors paid heed to this instruction when they answered Interrogatory 4.

The court fully recognizes that the apportionment of damages rather than liability is a rather novel idea. However, this is consistent with the court's holding that the avoidable consequences defense goes to the question of the amount of damages which must be paid by the defendant and not to the question of causation. The jurors were clearly told that they were to determine what portion of the wrongful death damages should be borne by the plaintiff because of Mrs. Munn's unreasonable refusal to accept a blood transfusion and that they could place that figure at 100 percent even

---

7. If the plaintiff had raised the matter of inconsistent answers immediately upon the jury's returning its verdict the question could have been resolved by giving the jurors further instruction and returning them for further deliberation to clear up the apparent inconsistency. However, once judgment is entered on the jury's verdict, the rule stated here would apply.

if they determined that the defendant's negligence was a causal factor in the death of plaintiff's decedent. Although the interrogatory asked this question in a manner that was less than clear, the court is convinced that the jurors followed their instructions and that there is no irreconcilable conflict in the answers given to Interrogatory 4. The apparent conflict disappears when one realizes what the jury has determined is: although the defendant's negligence was a proximate cause of Elaine Munn's death, the plaintiff should bear the economic cost of that loss because it was 100 percent avoidable.

■ The plaintiff's next assignment of error concerns the court's refusal to instruct the jury that the reasonableness of Mrs. Munn's refusal of blood was to be determined by reference to a subjective standard. In short, the plaintiff asked the court to instruct the jury either directly that it was to consider what a reasonable Jehovah's Witness would have done in this situation or to instruct in such a way that the plaintiff could argue that the standard to be applied was that of the reasonable Jehovah's Witness. Once again, there is no Mississippi case directly on point. However, the state supreme court has referred to the "familiar rule applicable to injuries generally, whether in tort or in contract, that the injured person shall use *reasonable* care and effort to prevent or minimize, the injury." *North American Accident Ins. Co. v. Henderson,* 180 Miss. 395, 177 So. 528, 530 (1937) (emphasis added). The Fifth Circuit has stated that the doctrine of avoidable consequences applies "where the injured party has, subsequent to infliction of the harm, failed to exercise that degree of care society demands of the reasonable person." *Tennessee Valley Sand & Gravel Co. v. M/V Delta,* 598 F.2d 930, 932 (5th Cir.1979). The generally accepted "test is, what would an ordinarily prudent man be expected to do under like circumstances." 25 C.J.S. Damages § 33 (1966). The standard is clearly an objective one, although the jury may be allowed to consider such circumstances as the knowledge possessed by the tort victim about the risks of the proposed treatment and the likelihood of success if the treatment was accepted. The jurors were also instructed in this case that they could consider Elaine Munn's religious beliefs as one of the surrounding circumstances which impacted on the reasonableness of her decision.

■ The plaintiff also argues that the court erred in refusing to instruct the jury that Elaine Munn's children would receive a pro rata share of any damages awarded for her wrongful death. An action may be brought under Mississippi's wrongful death statute by, among others, "the husband for the death of the wife", but any "damages for the injury and death of a married woman shall be equally distributed to the husband and children" regardless of who brings the suit. Miss.Code Ann. § 11–7–13 (1989 Supp.). Clearly the children of the deceased are entitled to share in any recovery under the statute. However, this does not mean that the jury must be informed of that fact. The plaintiff has cited no authority to that effect; nor can this court think of any reason why the failure to instruct the jurors that the children would share in any award would result in any prejudice to the plaintiff's case. The lack of such knowledge would in no way effect the jurors' ability to determine whether any damages should be awarded and, if so, what the award should be.

■ The plaintiff further contends that a new trial is mandated because the court allowed counsel for the defendant to delve too deeply into the plaintiff's religious beliefs by asking questions which were designed to prejudice the jurors against the plaintiff because of those religious beliefs. The plaintiff refers specifically to questions concerning the Jehovah's Witness teachings that Jesus returned to Earth in 1914, that they should not salute the flag or serve in the armed forces. These questions were part of a series of questions which were aimed at determining whether the plaintiff and his wife sincerely held the beliefs which they claimed motivated their refusal of blood transfusions. The plaintiff contends that the defendant injected the element of religion in the case by raising

the defense of avoidable consequences. This is not exactly the case. When the defendant raised that defense, the plaintiff came forward with the explanation that the refusal to accept the recommended medical care was in keeping with the Munn's religious beliefs.[8] One of the questions for the jury was whether the Munn's profession of the Jehovah's Witness faith was sincere. The defendant was entitled to elicit from the plaintiff evidence which was relevant to this question.

■ In his motion for new trial, the plaintiff again raises the argument that the jury should have been instructed on the "eggshell skull" rule. This argument was fully discussed and rejected in the earlier opinion. *Munn*, 719 F.Supp. at 528–29. This rule is merely another way of stating the general rule that although the defendant is not liable for any physical problem that the plaintiff had prior to the defendant's act of negligence, he is liable for the exaggeration of that physical problem which is caused by his negligence, even if the exaggerated consequence was not foreseeable. The rule simply does not apply to a situation where, after the act of negligence has resulted in an injury, the plaintiff freely chooses to refuse recommended medical treatment, even though the disposition to make that choice pre-existed the act of negligence.

Another point raised in support of the new trial motion which was addressed in the earlier opinion is that the application of the doctrine of avoidable consequences in this case violated the Free Exercise Clause of the First Amendment. The court has nothing new to add to its prior discussion of this argument. *See Munn*, 719 F.Supp. at 529–30.

■ The final point raised by the plaintiff is that the defendant used all three of her peremptory challenges to exclude blacks from the jury. The plaintiff cites *Edmonson v. Leesville Concrete Co., Inc.*, 860 F.2d 1308 (5th Cir.1988), as authority for the proposition that the use of peremptory challenges to exclude prospective jurors in a civil case because of their race violates the Equal Protection Clause of the Fourteenth Amendment. In *Edmonson*, a Fifth Circuit panel held that the Supreme Court's ruling in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), applied to civil cases as well. Rehearing by the court sitting *en banc* was promptly granted. *Edmonson*, 860 F.2d at 1317. However, no decision has yet been issued by the full court. Assuming, without deciding, that *Batson* does indeed apply in civil cases, this ground for new trial must fail as well, because the plaintiff failed to raise the issue in a timely manner. The court has carefully reviewed the transcript of the trial and finds that no objection was raised by the plaintiff when the defense made its peremptory strikes; nor did the plaintiff move to strike the jury panel or in any other way object to the seating of the panel at the time the jury was called, seated, and sworn in. The panel opinion in *Edmonson* clearly contemplates that the rules adopted by the courts in relation to a *Batson* challenge are to be followed in a civil case. The clear rule in this circuit, at least, is that a *Batson* challenge to the seating of a jury must be made promptly. *United States v. Erwin*, 793 F.2d 656, 667 (5th Cir.1986). In *Erwin*, the court held that the motion to strike was untimely when made before the jury was empaneled, but more than a week after the peremptory strikes had been made, and after the remaining veniremen had been released. In the case at bar, the challenge was raised for the first time after trial of the case on a motion for a new trial. Thus, the motion was clearly untimely.

## Conclusion

For the above-listed reasons, the plaintiff's motion for a new trial will be denied. An appropriate order will be entered.

---

**8.** This is not intended to state or imply that these were separate events which occurred in this chronological order.